SILVESTER et al., Appellants, v. CITY OF ST. LOUIS.

Division Two, November 12, 1901.

Condemnations: SUIT TO RECOVER COMMISSIONERS' AWARD: APPROVAL OF COUNCIL: VETO OF MAYOR. Commissioners were appointed by the court in a proceeding properly begun by the city to condemn private property for a street. The award of the commissioners was filed in the court, and, as the charter required, approved by the municipal assembly. The court heard exceptions thereto, and reduced the award for improvements, but confirmed it as to the value of the land, and entered final judgment confirming the report with modifications, and a copy thereof was sent to the assembly, which by bill appropri-

ated the money necessary to pay the same, but this bill was vetoed by the mayor, and his veto sustained by the assembly. *Held* that there was no such final judgment as gave the property-owner the right to sue for the amount thereof, since the charter provided that such appropriations became binding upon the city when approved as "provided by ordinance," and that implies that the mayor's approval was necessary to give validity to the bill which passed the assembly. It was discretionary with the city, after the award was made by the court, to pay the damages assessed and take the property, or abandon the proceeding; and by the mayor's veto it exercised that discretion to abandon the proceeding. The bill appropriating the money was not a mere resolution which became effective without the mayor's approval, but as the city's charter provides that the appropriation shall be made "as provided by ordinance," his approval was necessary before the judgment of the court could be made the basis for a suit for the amount of the award.

Appeal from St. Louis City Circuit Court.—*Hon. L. B. Valliant,* Judge.

AFFIRMED.

*James M. Sutherland* for appellants.

My contention is that for the purpose of making the final appropriation under section 10, article 6, the assembly alone, without the concurrence of the mayor, has the power, under that section, to say that the money shall be paid to those whose property has been taken in terms of the commissioners' report. In other words, the municipal assembly can legislate in certain instances without the advice or concurrence of the mayor, and the latter's signature is not necessary to give vitality to the assembly's acts. This conclusion is drawn from the language of the charter. For example, section 9, article 6, commands that immediately after the commissioners' report is filed with the circuit clerk "......upon application of the city counselor,

reasonable time to report the result of the same to the assembly for its information and approval." The petition contains an allegation that that course was followed in this case, and the agreed statement of facts admits its truth. The "approval" must necessarily have been done by an open formal vote of both branches, without the mayor being a party to its action. No intimation is given that the assembly's action must be re-inforced by the signature of the mayor, or that he must necessarily in any way concur in the assembly's action. Now the section which authorizes the necessary provision to be made for the payment of amounts awarded individuals whose lands are taken reads (section 10, article 6): ". . . . . . . . It shall be the duty of the comptroller, as soon as the same is recorded, to furnish a copy thereof to the assembly, and the assembly shall at its first session thereafter make an appropriation for the payment out of the city treasury of all damages assessed in favor of the owners of property appropriated, and the city treasurer shall cause the same to be paid to the parties entitled thereto. . . . . . . Any failure of the assembly within the time above stated, to make such appropriation, shall operate as a dismissal of such proceeding."

*B. Schnurmacher* and *Chas. Claflin Allen* for respondent.

(1) Under the provisions of the charter the municipal assembly may, at any time after the report of the commissioners in a condemnation proceeding has been filed in the circuit court and before final judgment thereof, dismiss or withdraw the proceedings on payment of costs. The result is to prevent a renewal of such action for ten years, except upon certain terms and conditions. Art. 6, sec. 9. And even after the confirmation of the report, the same result and penalty ensue if the assembly should fail at its first session thereafter to make an appropriation for the damages ascertained. "And failure of the assembly within the time above stated shall operate as a

dismissal of such proceedings and no further action shall be commenced for a period of ten years, except as hereinbefore provided in case of a dismissal of the suit." Art. 6, sec. 10. (2) From the facts pleaded and admitted, it appears that plaintiff has not been disturbed in the possession of her property; that her title has not been divested out of her or vested in the city; and that the condemnation proceedings were abandoned in conformity with the city charter. Therefore, plaintiff can not have her property and at the same time compel the public to pay her its value as ascertained by the commissioners for purposes of condemnation. St. Joseph v. Hamilton, 43 Mo. 282; State ex rel. v. Hug, 44 Mo. 116; Simpson v. Kansas City, 111 Mo. 237; Dillon's Municipal Corporations (4 Ed.), sec. 608, et seq; Lewis on Eminent Domain, sec. 656. (3) No appropriation for the payment of damages in street opening proceedings could be made by the municipal assembly except "by ordinance." A simple resolution would not, as contended by appellant, be sufficient. Sec. 26, par. 2, art. 3, Charter; Sec. 14, art. 5, Charter; Sec. 10, art. 6, Charter of St. Louis.

BURGESS, J.—This is an action by plaintiffs to recover of defendant the sum of ten thousand three hundred dollars, being the amount, and interest from July 28, 1897, of the award of commissioners for damages to plaintiffs' property in St. Louis in a proceeding by said city to establish and open Compton avenue, a public highway, from Magnolia avenue southwardly to its intersection with Wilmington road. The trial resulted in a judgment for defendant from which plaintiffs appeal.

The facts briefly stated are about as follows: On December 26, 1893, the defendant city undertook to establish Compton avenue, a public highway from Magnolia avenue

southwardly to its intersection with Wilmington road, and to that end adopted ordinance No. 17346. Thereafter on the first day of August, 1894, the city instituted suit in the circuit court, the necessary opening proceedings for the appropriation of private property for that purpose.

The plaintiff, Sarah A. Silvester, owned a parcel of land fronting one hundred and ninety-nine feet six and one-fourth inches on Compton avenue, and under the scheme for opening and extending Compton avenue a strip of her land would be taken off the eastern edge thereof to a uniform width of twelve feet six and one-fourth inches, thus making the required strip twelve feet six and one-fourth inches by one hundred and ninety-nine feet six and one-fourth inches.

Commissioners were regularly appointed by the circuit court, and in their report duly filed they awarded the plaintiff, Sarah A. Silvester, eight hundred dollars, as the value of the land proposed to be taken, and ten thousand dollars as the value of certain improvements thereon.

In accordance with section 9 of article 6 of the city charter, the report of the commissioners, after having been filed in the circuit court, was reported to the municipal assembly, which approved it.

Certain exceptions which had been filed were heard, with the result that the court reduced the damages awarded plaintiff for her improvements to ninety-five hundred dollars, but leaving the award for the land at eight hundred dollars, thus making the total damages allowed her ten thousand three hundred dollars. All of the exceptions having been disposed of, the court entered a final judgment confirming the report and a certified copy thereof was duly delivered, in accordance with section 10 of article 6 of the charter, to the comptroller, who furnished a copy thereof to the assembly. The assembly thereupon passed through both of its branches, a bill for the appropriation of

the amount necessary to pay the damages assessed in the opening proceedings, but this bill was vetoed by the mayor and returned to the branch of the assembly wherein it originated. Thereafter, the mayor's veto was sustained in both houses of the assembly and no appropriation for the payment of the damages was ever made, nor was any other step had or taken in reference to the opening of Compton avenue.

Thereupon, the plaintiffs brought this suit against the city of St. Louis, for the amount of the award of the commissioners, together with interest thereon from July 28, 1897, the day when the circuit court approved the report. The petition recites that the municipal assembly made the necessary appropriation for the payment of the damages ascertained by the commissioners, but upon the trial it was conceded that this allegation was not founded in fact, and the facts as they are above stated were agreed upon by stipulation, and upon them the case was submitted to the lower court. It was also admitted upon the trial that the next session of the municipal assembly, following the confirmation of the report, had expired.

Plaintiffs contend that the vote by the municipal assembly for the payment of all the damages to property-owners affected by the condemnation proceedings, was sufficient in law to entitle plaintiff, Mrs. Silvester, to her damages as assessed, and make it equivalent to a common-law judgment upon which she is entitled to maintain this action, regardless of the fact that the ordinance passed by both branches of the assembly for the appropriation of the amount necessary to pay the damages assessed in the opening proceedings was vetoed by the mayor.

By the provisions of section 9, article 6, of the charter of the defendant city, it is provided that the city may at any time before the final confirmation of the report of commissioners appointed in any condemnation proceedings, dismiss and withdraw said proceedings. Judge DILLON, in passing upon the

same subject in his work on Municipal Corporations, Vol. 2 (4 Ed.), section 608, says:

"Under the language by which the power to open streets and to take private property for that purpose is usually conferred upon municipal corporations, they may at any time before taking possession of the property under completed proceedings, or before the final judgment, recede from or discontinue the proceedings they have instituted. This may be done, unless it is otherwise provided by legislative enactment, at any time before vested right in others have attached. Until the assessments of damages have been made, the amount can not be known; and on the whole, it is reasonable, that after having ascertained the expense of the project, the corporation should have the discretion to go on with it or not, as it sees fit, it being liable in proper cases for any wrongful acts injurious to the owner, as shown in the next section."

And where the condemnation proceedings have been rightfully discontinued, the person whose land has been sought to be condemned can not maintain mandamus to compel payment of the sum estimated by the commissioners to be his damages, nor can he maintain an action for that purpose; but he may have an action for damages for any wrongful and injurious acts done by the corporation in course of the condemnation proceedings. [2 Dillon's Municipal Corporations (4 Ed.), sec. 609.]

In the following section (610), the same author remarks:

"Nor has the municipal corporation always been considered as concluded and bound to pay the damages awarded, although the report of the commissioners appointed by it had been confirmed. The act to enable the city of Baltimore to procure a supply of water authorized the city to condemn lands, required the inquisition of damages to be returned to the circuit court, and provided that it 'should be confirmed by said court at its

next sitting, if no sufficient cause to the contrary be shown, and the 'valuation when paid or tendered shall entitle the city to use the land as fully as if it had been conveyed by the owner.' It was held that the city was not bound by the mere inquisition of damages, although confirmed by the court, to pay the amount awarded, but could, nevertheless, abandon the location in question; that the judgment of confirmation simply decided the value of the land, and that payment or tender of the valuation is necessary to give the city a title to the property. It was admitted by the court, however, that if the owner suffered loss or injury by reason of the wrongful acts of the city, he might recover damages therefor."

The same rule is announced in Lewis on Eminent Domain, sections 655, 656.

City of St. Joseph v. Hamilton, 43 Mo. 282, was a proceeding for the purpose of widening a street in that city and to condemn a strip of ground of the defendants for that purpose. A judgment was rendered against the city upon an award made by commissioners in widening the street, and it was sought by Hamilton to enforce the judgment. It was ruled that the city might dismiss its proceedings at any time before final judgment in the circuit court, and that the only liability that would be incurred would be the expenses, so if excessive damages were allowed and it be thought expedient to do so, it might decline to proceed with the work. The same rule is announced State ex rel. Rogers v. Hug, 44 Mo. 116; Simpson v. Kansas City, 111 Mo. 237; Whyte v. City of Kansas, 22 Mo. App. 409.

Where the city chooses to abandon the enterprise or declines to take possession or make use of the property, there is no divestiture of the title from the owner, and he is not entitled to pay therefor from the public. It is, therefore, entirely discretionary with it whether it will pay the damages assessed and take the property, or abandon it altogether. Condemnation

proceedings for public uses could not be prosecuted in cities upon any other theory, for in many cases juries might award damages so exaggerated as to render it impossible for them to do so, hence, the right is accorded them of refusing to take the property or pay the damages assessed if it feels disposed to do so.

Plaintiffs, however, contend that under section 10, article 6, of the city charter, the action of the two houses of the municipal assembly in voting the amount of damages to them under the judgment of the court confirming the report of commissioners, was sufficient and effective without the concurrence of the mayor, as if it were a mere resolution of the two houses. That section provides that after the report of the commissioners has been approved and final action taken thereon by the court, the assembly shall "make an appropriation for the payment, out of the city treasury, of all damages assessed in favor of the owners of property appropriated, and the city treasurer shall cause the same to be paid to the parties entitled thereto, respectively, or into the court for their use, *as provided by ordinance.*" So that it will not do to say that an ordinance approved by the mayor, was not a prerequisite to the payment of the money. No other conclusion can be reached when section 10 of article 6, and section 26 of article 3, and section 14 of article 5, are read together.

Our conclusion is that the judgment should be affirmed, and it is so ordered. All concur.