JOHN H. BLAIR, Appellant, v. ANNIE E. BLAIR.

### Division One, December 24, 1912.

1. **RES ADJUDICATA: Land Titles: In Divorce Decree.** Where the ownership of a certain tract of land ·was considered in the divorce trial in the mere incidental matter of adjudging alimony, and it was assumed that the husband's money bought the land whose title was taken in the wife, yet if the decree therein did not attempt to adjudicate the title, and did not say whether it belonged to the husband or wife, it was not an adjudication that the husband's money bought the land, and is not *res adjudicata* of the title in a suit by the husband to have a resulting trust declared in his favor, the ownership of the land not being a question directly in issue in the divorce suit but considered only for the purpose of arriving at a just alimony.

2. **RESULTING TRUST: Deference to Chancellor.** Where the title was placed in the wife at the time the property was bought, and the husband testified that it was bought with his wife's money but that she agreed to let him have it because he had paid for the home place which was deeded to her, and she denied this, and testified that she received $8,000 from relatives which came to her hands prior to the purchase of the land, the court will defer to the chancellor, who had the witnesses before him, and adjudged that it was the wife's money that was used to buy the land.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*Joseph H. Blair pro se.*

(1) Appellant paid the purchase money for the land, and thereby a resulting trust arose in his favor. The presumption in favor of an advancement where the land is paid for by the husband and conveyance is made to the wife, is a presumption of fact and not of law, and may therefore be rebutted by evidence showing that at the time of the conveyance it was the in-

tention of the husband that the wife should not take a beneficial interest. Price v. Kane, 112 Mo. 412; Darrier v. Darrier, 58 Mo. 222; Hall v. Hall, 107 Mo. 109; Siebold v. Christman, 7 Mo. App. 254; Viers v. Viers, 175 Mo. 444; Case v. Espenscheid, 169 Mo. 215; Curd v. Brown, 148 Mo. 82. And where the wife at the time of the conveyance agrees to hold the property in trust for the husband, who advanced the purchase money, this negatives the presumed intention on which the presumption rests, and a resulting trust arises in favor of the husband. 15 Am. & Eng. Ency. Law (2 Ed.) 1157. And the fact that the husband took possession of the land, improved it, and paid the taxes thereon is some evidence of his original intention that the purchase should be in trust for him. Smith v. Strahan, 16 Tex. 314; Maxwell v. Maxwell, 109 Ill. 588; Fery v. Morrison, 159 Ill. 244; Scott v. Calladine, 79 Hun (N. Y.), 79. (2) A party whose money is used in the purchase of land, with or without his consent, becomes the equitable owner thereof. McMurray v. McMurray, 180 Mo. 526; Siling v. Hendrickson, 193 Mo. 365. And although the deed be taken in the name of another, a resulting trust is created in favor of the party furnishing the purchase money. Plumb v. Cooper, 121 Mo. 668; Condit v. Maxwell, 142 Mo. 226. And this is so though the title is taken in the name of the grantee with the consent of the person paying the consideration, and though he drew the deed in the name of the nominal grantee himself, and had it placed on record. Condit v. Maxwell, 142 Mo. 275; Lewis v. Wells, 85 Fed. 896; 15 Am. & Eng. Ency. Law (2 Ed.), 1137; Wrightsman v. Rogers, 239 Mo. 417. (3) Resulting trusts may be established by parol evidence. Smith v. Smith, 201 Mo. 545; Heil v. Heil, 184 Mo. 666; Brinkman v. Sunken, 174 Mo. 709; Garrett v. Garrett, 171 Mo. 155; Pitts v. Weakley, 155 Mo. 109. (4) A resulting trust may be established for a proportional part of the land according to the amount paid

by the one claiming a resulting trust, and he may have a proportional part of the land set off to him, or the court may render a decree for his proportional share in the land. Crawford v. Jones, 163 Mo. 594. (5) There were practically two judgments in the divorce suit between Annie E. Blair and J. H. Blair, the parties to this suit. One, the judgment of divorce, and the other the judgment as to alimony. The amount of the judgment that should be rendered depended on the property that each party owned, the earning capacity of the defendant in that case, and the property he had given her. Blair v. Blair, 131 Mo. App. 571. Appellant admitted in that case that respondent was the legal owner of the land here in controversy, but claimed that he was the beneficial owner because he had paid the purchase money for the land, and the respondent claimed to be the legal and beneficiary owner because she had paid the purchase money for the land. The St. Louis Court of Appeals in its finding of the facts in that case, found and adjudged that the appellant had paid the consideration, $3500, for the land. This was a final and conclusive adjudication of that fact, which was made an issue in every one of the pleadings, and the evidence, and it cannot again be relitigated, as between the parties, in this or any other proceedings. That question of fact was a material issue in that case and was decided upon its merits. Sec. 2375, R. S. 1909; Womack v. St. Joseph, 201 Mo. 490; State ex rel. v. Branch, 134 Mo. 592; 24 Am. & Eng. Ency. Law (2 Ed.), 765, 710; Mason v. Summers, 24 Mo. App. 174; Williams v. Iron Co., 30 Mo. App. 662.

*L. G. Blair* and *J. D. Hostetter* for respondent.

(1) Where the husband purchases real estate with his own funds and causes the same to be conveyed to his wife, a prima-facie case is made out that the hus-

band intended the conveyance to be a provision or settlement for the wife and not a resulting trust. This presumption, of course, can be overcome, but in order to do so the evidence must be clear, strong and unequivocal and so definite and positive as to leave no room for doubt in the mind of the chancellor. Viers v. Viers, 175 Mo. 453; Case v. Espenscheid, 169 Mo. 215; Curd v. Brown, 148 Mo. 82; Woodward v. Woodward, 148 Mo. 246; Schuster v. Schuster, 93 Mo. 438; Darries v. Darries, 58 Mo. 226; Derry v. Fielder, 216 Mo. 192; Mondrell v. Riddle, 82 Mo. 31; Rogers v. Rogers, 87 Mo. 257. (2) There can be no resulting trust in this case, conceding the facts to be as claimed by Blair in his testimony. He pleads a verbal agreement and relies on it in his testimony. Now if the alleged verbal agreement, which he testified to as having been made between himself and his wife, had been in writing it would have constituted an express trust as distinguished from a resulting trust. Not being in writing it can not be enforced as an express trust. The terms of the alleged verbal agreement show that it was not a resulting trust, but rather an ineffectual attempt to create an express trust. An express trust is void unless manifested in writing as required by the statute. Heil v. Heil, 184 Mo. 673; Crawley v. Crafton, 193 Mo. 431. (3) Plaintiff's cause of action is barred by the ten-year Statute of Limitations which runs against a resulting trust. Reed v. Painter, 145 Mo. 356; Landis v. Saxton, 105 Mo. 486; Hudson v. Calhoun, 193 Mo. 547. (4) The judgment of the St. Louis Court of Appeals in the divorce case was not an adjudication of the title to the property in controversy, nor was it an adjudication as to the question as to who paid for the property in controversy so as to shut out the inquiry in the case at bar. The title to the farm in controversy was not in issue in the divorce case, and necessarily by reason of the nature of the suit could not be an issue. It was outside the

province of the court in the divorce case to settle anything other than the issues which arose in that case.  In the determination of the divorce case the court had no power to divest title as to the property in controversy, or to invest either of the litigants with title to any specific property.  The property which each owned was scheduled only for the purpose of enabling the court to determine the amount of alimony which should be allowed to the wife or whether or not any alimony at all should be allowed.  The question as to who paid for the farm in controversy was not in issue in the divorce case, but if in issue at all it was only collaterally so.  Gwin v. Waggoner, 116 Mo. 151; Hennessy v. Brewing Co., 145 Mo. 115.

GRAVES, P. J.—Action by plaintiff to divest defendant of the record title to 100 acres of land in Pike county, in value at the present time of $5000 to $6000. Petition in three counts.  The first count avers that the plaintiff paid for the land in question with his own funds, and seeks to have a resulting trust declared.  By the second count an express agreement is alleged by the terms of which it is stated that the defendant took the title agreeing to hold the same for the use and benefit of the plaintiff.  By the third count a receiver is asked for the property.

In appropriate answer the defendant joined issue on all the matters averred in plaintiff's petition, and as a further defense invoked the ten-year Statute of Limitations.  Defendant also answered to the effect that the purchase price of the land in question was paid out of her individual and separate funds, and that she was in fact and in law the legal owner thereof.

By reply the plaintiff pleaded that there had been an adjudication of the fact as to whose money was used in the payment for the farm in the case of Blair v. Blair, 131 Mo. App. 571.  A reading of that case

247 Mo.—5

will throw some side light upon the present, and obviate a lengthy detail of many things in this case. Upon a hearing *nisi* the chancellor found against the plaintiff and dismissed his bill, from which judgment of dismissal and costs, he has appealed. There are but two real questions in the case:

(a)   Is the plea of former adjudication good?

(b) . Whose money paid for this land?

Of these in their order.

I.   The question of *res adjudicata* in this case is thus situated. In 1905 the defendant in this case, Annie E. Blair, sued the plaintiff in the present suit, Joseph H. Blair, for divorce, and as an incident thereto asked for alimony. In July, 1906, the circuit court of Pike county heard this divorce proceeding, and entered its decree granting to Annie E. Blair a divorce from Joseph H. Blair, and also giving her alimony in gross in the sum of $2200 and fifteen dollars per month for the support and maintenance of two minor children. From this decree Mr. Blair appealed to the St. Louis Court of Appeals, and in that court the alimony in gross was, for reasons in the opinion stated, reduced to $1000, and with this modification affirmed. Appellant's idea of *res adjudicata* seems to spring from a certain state of the record in the divorce suit. In the petition for divorce, evidently inserted on the idea of giving the court a basis for fixing alimony, Annie E. Blair used this language: "Plaintiff states that her property consists of the residence property in Bowling Green, and one hundred acres of farm land, and with that exception she is without means of support for herself and family and without the means for the prosecution of this suit." It should be noted that no land is described, and the court is not asked to make any decree as to the land. Turning to Mr. Blair's answer in the divorce suit we find this language: "He further admits that the legal title to the farm mentioned in

said petition is in the plaintiff, but defendant denies that she owns the same or any interest therein, and says that the defendant is the owner of the equitable title to same." It should be noted that he describes no land and does not ask the court to enter a decree with reference thereto. Mrs. Blair in the divorce suit replied to the answer, and in the course of such reply used this language: "Now comes the plaintiff in the above entitled cause, and for reply to defendant's answer herein denies each and every allegation of new matter in said answer contained, except those hereinafter admitted to be true."

Thus stand the portions of the pleadings in the divorce suit relied upon by the plaintiff in the case at bar. His present abstract of record contains this excerpt from the judgment *nisi* in the divorce suit:

" The judgment of the Pike county court in said cause, rendered July 2, 1906, which granted plaintiff in said cause a divorce, alimony and support for the minor children, and in relation to the real estate mentioned in said pleadings found the facts to be as follows: That at the date of the institution of the suit plaintiff's residence was, and for many years prior thereto, had been in the west portion of Bowling Green, and since the year 1880, in the property owned by the plaintiff in her own right, the title to the same standing and being in plaintiff. And just prior to said separation defendant demanded that plaintiff deed to him a certain farm the legal title to which was in plaintiff, and which plaintiff claimed to own in fee as her own property.

"The motion for a new trial in said cause, filed July 5, 1906, and record showing that it was overruled by the court July 13, 1906.

"The mandate of the St. Louis Court of Appeals in said cause, and read in evidence that portion of said court's judgment and decree as to alimony, and

the findings of the facts by said court upon which said decree was based, which is as follows.''

Such abstract also contains the following excerpt from the opinion of the St. Louis Court of Appeals in the divorce case:

''We take up the question of alimony. Whether or not the court's allowance is reasonable is to be determined on consideration primarily of the property and earning capacity of the defendant, but with reference, too, to the means owned by his wife in her own right, and particularly that portion of her means which had been given to her by him. [Golding v. Golding, 74 Mo. 123; 2 Am. & Eng. Ency. Law (2 Ed.) pp. 120 to 123 and citations in notes.] Defendant had invested, say, $3500 of his means in the home place, and the title to which was in his wife. He had also invested the same sum in a farm in the county, which was in her name; that is to say had furnished $7000, if not more, to acquire the properties to which she holds title. Besides this she has some household furniture, cows, and a little money. We estimate his own possessions as follows: A half interest in three buildings, $900; two-thirds interest in abstract books, $3000; law library, $300; four horses, $300; one note, $260; cash, $800; other personal property, $200; total, $5760. Such is our maximum valuation of his holdings after careful attention to the testimony bearing on the question. The defendant is fifty-eight years old, utterly broken in health, unable to practice his profession, and the income from the abstract business is very small. In fact, the testimony is that for three or four years past the income has not been enough to pay the expenses of keeping them up—had not been quite four hundred dollars per annum. Defendant is manifestly near the end of his earning capacity and to pay a judgment of $2200 and then fifteen dollars a month for the support of the minor children, will probably be beyond his power. To compel him to raise such a sum will re-

duce him, in our opinion, to absolute penury.  Considering the property belonging to plaintiff which he paid for, it looks too harsh to force a payment out of his present means of $2200.  The allowance of fifteen dollars a month for the two minor children is reasonable.  It is to be remarked that these children, as well as the older ones, were left some means by a relative.  The decree will be modified so as to allow plaintiff $1000 in gross and with this modification will be affirmed.''

All those matters were introduced in evidence upon the trial of the present case in the circuit court, and they furnish the basis for the claim of *res adjudicata*.  We need not discuss the question as to whether or not a decree in a divorce proceeding can adjudicate the title to land.  It is clear from this record that the question of the title to land was not placed at issue in the divorce proceeding.  Ownership of land may have been considered in the mere incidental matter of alimony, but not in the sense of determining either the legal or equitable title thereto.  Nor does the judgment in the divorce case make any attempt at the adjudication of title to the land here in dispute.  It is a simple judgment for divorce and alimony.  It is, therefore, clear that the decree in the divorce case did not undertake to adjudicate the rights of either party to the one hundred acres of land incidentally mentioned in the pleadings therein.  Whether it was the land involved in the present case is somewhat a matter of speculation, but however that be, it is clear that neither the circuit court nor the Court of Appeals undertook to adjudicate land titles, and did not adjudicate land titles.

Plaintiff urges, however, that there is an adjudication of the fact that his money paid for the one hundred acres of land mentioned incidentally in the divorce case, and that by such adjudication of that fact the defendant in this case is bound.  It may be grant-

ed, without deciding the point, that such is the law, yet it would not avail the plaintiff here. The real issue in the divorce case was not tied up with the question of alimony, either temporary or permanent. Alimony is largely incidental to the case, and because the trial court incidentally investigated the property holdings of each party in order to be enlightened upon the question as to what allowance should be made in the way of alimony, it should not be said that the court's conclusion as to who owns or claims a certain tract of land, should be considered as *res adjudicata* in a proceeding where that question is one of vital importance, and one going to the very merit of the controversy. So that we say that although it be conceded (a question we do not at this point decide) that under proper issues a decided question of fact may be *res adjudicata* as to the fact found, yet such rule would have no application in the case at bar. A fact found to be conclusive upon the parties must be a fact "directly in issue" in the case decided, and one within the purview of the issues made in such case. [24 Am. & Eng. Ency. Law (2 Ed.), p. 765].

It is clear from the issues stated in the divorce proceeding that the parties were not seriously and forever attempting to settle the fact as to who had paid for the one hundred acres of land incidentally mentioned. As we are impressed, there is nothing in the question of *res adjudicata*, and that point is therefore ruled against the plaintiff.

II. Reverting now to the fact as to whose money went into this land. Upon this question the evidence is in hopeless conflict as to a part of the money. As to the major part there is but little dispute that it was Mrs. Blair's money. Mr. Blair admits this, but says that his wife agreed to let him have this money, because he had paid for the home place which was deeded to her. This Mrs. Blair denies. Mrs. Blair

received in all some $8000 from several estates of deceased relatives. Most of it came to her hands prior to the purchase of this land. The trial court was amply justified in finding that all the money came from Mrs. Blair, and we are impressed that the weight of the evidence so shows. At least the trial court had the benefit of seeing and hearing both the parties upon this vital point, and we will yield to his judgment upon the question of credibility. If Mrs. Blair paid the money, her title should not be disturbed, and other questions suggested in the brief can well be omitted. Let the judgment be affirmed. All concur.