## THE STATE ex rel. LEWIS A. SCOTT et al. v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

### Division One, April 13, 1925.

1. **CERTIORARI: Laches: Delay in Application for Writ.** A delay of thirty days, after a court of appeals has decided a case, in applying to this court for a writ of *certiorari* to quash its record, does not show laches, where there is no showing that judgment in pursuance to the mandate has been rendered in the circuit court, notwithstanding the mandate in the meantime has gone down and no stay of the mandate was asked.

2. **DRAINAGE DISTRICT: Damages: Award to Life Tenant as Owner: Trust Fund.** Where land taken by a drainage district was in possession of a life tenant and the title to the fee was in remaindermen, and in the report of the commissioners assessing benefits and damages such life tenant was alone listed as the "owner" of the land, and the judgment of the circuit court confirming the report adjudged to such life tenant alone the damages awarded, the damages, when paid to the clerk of the court, do not belong to such life tenant alone, and she is not entitled to the money absolutely, but she takes it subject to the same conditions upon which she held the land, which are that she has a lifetime use of the fund, but must hold it as trustee for the remaindermen.

3. ———: **Judgment Awarding Damages for Land Taken to Life Tenant Alone: Collateral Attack.** Where land taken by a drainage district, organized under the Circuit-Court-Drainage-District Act, was listed, in the report of the commissioners appointed to assess benefits and damages, to the life tenant alone as "owner," and the report was confirmed, and the damages awarded were adjudged, by the judgment of confirmation, to such life tenant alone, and paid to the clerk of the court, such judgment was not, under the statute (Art. 1, Ch. 28, R. S. 1919), a final adjudication that said life tenant was entitled to the fund absolutely, without regard to the rights of the remainderman, nor in any true sense *res adjudicata* of the title to the fund; but if the life tenant brings suit against the clerk to compel him to turn over the fund to her unconditionally, he, being notified that she had only a life estate in the land, is entitled to allege in his answer facts showing that she had only a life estate in the land and in consequence only a lifetime interest in the fund, or damages awarded in lieu of the land, and to tender such fund

into court, to be distributed to whosoever the court may decide is entitled to it, and such answer is not, under the statute (Art. 1, Ch. 28, R. S. 1919), a collateral attack upon said judgment, for said judgment was only a determintion of the value of the land taken, and not a determination that the remaindermen, who were not made parties to the drainage proceeding, had no interest in the damages awarded; but the court is authorized, when such answer is filed, and upon her motion, without a reply thereto, for judgment upon the pleadings, to render judgment for the life tenant for herself and as trustee for the remaindermen for the amount of the fund; and the decision of the Court of Appeals, holding that the answer was a collateral attack upon the judgment confirming the report of the commissioners, and reversing the judgment and directing the circuit court to enter up judgment awarding the fund absolutely to the life tenant, was in conflict with the statutes and many decisions of this court, and is therefore quashed upon *certiorari*.

4. ———: ———: **Damages in Lieu of Land: Jurisdiction: Limited by Pleadings.** In a proceeding by a drainage district the life tenant only is required by the statute (Sec. 4415, R. S. 1919) to be listed as the "owner," and such life tenant includes remaindermen; and land taken for drainage purposes includes the interests of all persons therein, and the fee simple title of the land taken is vested in the district upon the payment of the damages awarded, and such damages when paid into court are to be considered in lieu of the land, and life tenants and remaindermen have the same interest in the damages paid that they formerly had in the land; but in awarding damages for the land taken it is not necessary, nor is it within the province of the court in such proceeding, to determine the rights and respective interests of the life tenants and remaindermen in the land, for there are no adversary pleadings, as between such owners, filed, or contemplated by the statutes, upon which the court could determine and declare, in such proceedings, what are their respective rights and interests in the land or in the damages awarded. The judgment awarding damages is potentially, but not absolutely, final, because the district may not pay them within five years after they are awarded, and in no event is it individual or personal to the life tenant alone made a party, but it is collective and inclusive of all persons interested in the land at the time damages are awarded, whether they be remaindermen, reversioners or mortgagees.

5. ———: ———: ———: **Clerk as Trustee.** The clerk of the circuit court, by the drainage statute and by virtue of his office, is a trustee, for the owners, of a fund placed in his hands as the amount of damages awarded for land taken by a drainage district, and he is

State ex rel. Scott v. Trimble.

entitled to a judgment of the court, when application is made therefor by a person claiming to be the sole owner, and before he pays it out, deciding to whom the fund actually belongs and in what proportions to each claimant and upon what conditions it shall be received by them.

Citations to Headnotes: Headnote 1: Certiorari, 11 C. J. sec. 133. Headnote 2: Eminent Domain, 20 C. J. sec. 289. Headnote 3: Judgments, 34 C. J. sec. 1437. Headnote 4: Drains, 19 C. J. sec. 199. Headnote 5: Drains, 19 C. J. sec. 199.

## Certiorari.

RECORD QUASHED.

*Franken & Timmons* for relators.

(1) If the opinion of the Court of Appeals conflicts with the general rules of law as announced by this court, the record will be quashed on *certiorari*. It is not necessary that precisely the same questions be involved, but it is only necessary that the conflict arises on similar facts and similar principles. State ex rel. Ins. Co. v. Allen, 295 Mo. 316; State ex rel. Continental Ins. Co. v. Reynolds, 235 S. W. 88; State ex rel. v. Vulgamott, 253 S. W. 1014. (2) The decision of the Court of Appeals that the judgment of the Carroll Circuit Court confirming the commissioners' report in the drainage proceeding was a personal judgment in favor of Minnie H. Clinkscales, in so far as the same affected the lands in which she owns a life estate, is in conflict with the rule of law announced by this court in Troegor v. Roberts, 284 Mo. 363. A proceeding to assess benefits and damages under Art. 1, Chap. 28, R. S. 1919, is a proceeding strictly *in rem* and the damages awarded must be paid to the actual owner of the real estate at the time of its appropriation. The Drainage Act is a code complete within itself and must be construed without reference to the general law applicable to condemnation proceedings. Mississippi & Fox River Drainage District v. Ackley, 270 Mo. 173; State ex inf. McAllister v. Norborne Land Drainage District Co., 290 Mo. 91, 131; In re Big Lake Drainage v. Rolwing, 269 Mo. 169. (3) Under the pro-

visions of Sec. 4405, R. S. 1919, the drainage district had the right, within five years after the rendition of the judgment relied upon by Minnie H. Clinkscales as giving her the absolute right to the money, although she owns only a life estate in the land, to abandon the project entirely. She is relying upon the Carroll Circuit Court judgment and as stated by the Court of Appeals claims the award "upon the ground that under the decree of the Circuit Court of Carroll County she was personally awarded said amount." If her position be correct, then she would have the right to the money although the land was never in fact appropriated. This position is manifestly unsound for the reason that the title does not pass until the appropriation. Since the title to the land does not pass until that time, it becomes apparent that the ownership of the land at the time of the appropriation is an issue at that time, but not at the time the amount of the award is fixed. When the condemning corporation has the right to abandon the proceedings, the judgment fixing the amount of the award is not a personal judgment in favor of the person named in the judgment. The persons who are the actual owners of the property at the time of its actual appropriation are alone entitled to the award. Silvester v. St. Louis, 164 Mo. 601; Land and Imp. Co. v. Kansas City, 293 Mo. 674; Hamilton v. Big Medicine Drain. Dist., 261 S. W. 940. (4) The Court of Appeals held that the circuit court had jurisdiction of the parties and the subject-matter and held further that Minnie H. Clinkscales filed exceptions to the report of the commissioners in her own behalf. If this be true, then the remainderman was duly notified of the filing of the commissioners' report and the judgment confirming the same as affecting the lands in which he had an interest was as to him a judgment by default. The Court of Appeals further held that the judgment of the circuit court found her to be the owner of the land. Under said Drainage Act, the ownership of the land condemned and damaged was not in issue, and the court had no power to determine the owner-

State ex rel. Scott v. Trimble.

ship of the land as between the life tenant and the re-mainderman when no such issue was raised in the drain-age proceeding. Such a finding of ownership was beyond the power of the circuit court, and if its judgment be a judgment deciding who was the owner of the land, then such judgment is that regard is void. Charles v. White, 214 Mo. 187; Drainage District v. Campbell, 154 Mo. 151; Blair v. Blair, 247 Mo. 61; Drainage District v. Turney, 235 Mo. 80. (5) The holding of the Court of Appeals that the answer which pleads that Minnie H. Clinkscales owns only a life estate in the lands with the remainder in the children of Robert Clinkscales constituted a collateral attack upon the circuit court judgment, is in conflict with the rulings of this court in Troeger v. Roberts, 284 Mo. 363; Blair v. Blair, 247 Mo. 61; Drainage District v. Turney, 235 Mo. 80; Charles v. White, 214 Mo. 187; In re Drainage District v. Rolwing, 269 Mo. 161.

*Sebree, Jost & Sebree* and *M. J. Lilly* for respondents.

(1) The application for the writ of *certiorari* was delayed too long, and the temporary writ should be quashed. There was no request to the Court of Appeals to hold the mandate. It appears, therefore, that the respondents sat idly by from May 5th, when their motion for a rehearing was overruled, until June 3rd, and allowed the Court of Appeals to send down its mandate for action of the lower court thereon and its judgment to become a finality, without any notice or request to the Court of Appeals that they intended to apply to this court for a writ, or to stay the mandate until such application could be made. This delay under these facts is unreasonable. State ex rel. v. Ellison, 230 S. W. 973. (2) The answer does not deny the allegations of the petition nor state any defense. Secs. 1232, 1226, R. S. 1919; Boles v. Bennington, 132 Mo. 525, 528; State ex rel. v. Adams, 161 Mo. 349, 363; Equitable Life v. Pettus, 140 U. S. 226. (3) Collateral attack not permissible.

Hardin v. Lee, 57 Mo. 241; Halter v. Leonard, 223 Mo. 286; Union Depot Company v. Frederick, 117 Mo. 148; Fitzgerald v. DeSoto Road District, 195 S. W. 697. (4) Mrs. Clinkscales sued in her own name and the petition states a cause of action showing that she is the proper party plaintiff, and the only party entitled to sue for the money. There was no objection either by demurrer or answer that she was not a proper party plaintiff, or that there was a defect of parties. In such case the objection is waived, and her right to sue for and recover the money in her individual name was admitted. Secs. 1226, 1230, R. S. 1919; Johnson v. Railways, 247 Mo. 336; State ex rel. Jones v. Chemical Works, 249 Mo. 702; Baxter v. Transit Company, 198 Mo. 1; Rideout v. Burkhardt, 255 Mo. 116. (5) Under any view of the case, the judgment of the Court of Appeals that Mrs. Clinkscales was the proper party to sue for the money and was entitled to a judgment in her own name as prayed in her petition, is the law and not opposed to any decision of this court. Secs. 4405, 4415, R. S. 1919; Sec. 1156, R. S. 1919, authorizing trustees to sue in their own name; Nicolay v. Fritchie, 40 Mo. 67; Tittman v. Thornton, 107 Mo. 500; Catron v. Lafayette, 106 Mo. 659; Springfield Company v. Weaver, 137 Mo. 650. (6) The opinion written by the Court of Appeals was based on the state of the pleadings in the case before it, and is not in conflict with any of the decisions of this court cited by the relators. (7) The judgment of the Court of Appeals is right and will not be disturbed, even though this court may find that there are expressions in the opinion with which this court does not agree. The opinion is a part of the record, and should this court find parts of it that do not meet it approval, they may be quashed, and the judgment allowed to stand. State ex rel. v. Reynolds, 270 Mo. 589; State ex rel. v. Reynolds, 284 Mo. 372.

LINDSAY, C.—*Certiorari* seeking to quash the record of the Kansas City Court of Appeals upon appeal, in the case of State ex rel. Minnie H. Clinkscales, ap-

pellant, v. Lewis A. Scott et al., respondents (261 S. W. 680). Relator Lewis A. Scott was the Circuit Clerk of Carroll County, and the other relators were the sureties upon his official bond. The case in the circuit court was determined upon a motion filed by Minnie H. Clinkscales, as plaintiff, for judgment upon the pleadings. The pleadings consisted of the plaintiff's petition and the answer thereto filed by the relators. These pleadings, with the opinion of the Court of Appeals expressly grounded upon them, constitute the record to be reviewed in determination of the question whether there is conflict between the ruling of that court and controlling decisions of this court.

The suit of Minnie Clinkscales was one to recover the principal sum of $1500 paid to Lewis Scott, as circuit clerk, under the provisions of Section 4405, Revised Statutes 1919, by the supervisors of a drainage district in Carroll County. That was the sum allowed as the value of the property taken, and damages resultant thereto, in certain lands situated in said drainage district as fixed by the judgment of the circuit court having jurisdiction in said drainage district proceedings. The trial court rendered judgment for the plaintiff in the penal sum of the bond, $5000, and adjudged that she have execution in her favor "for herself and as trustee for remainderman under the will of Robert H. Clinkscales, deceased, in the sum of fifteen hundred and thirty dollars" and for costs. The trial court overruled the plaintiff's motion in arrest, and to modify that judgment, and the plaintiff appealed. The Court of Appeals reversed and remanded the cause with direction that "a judgment for $5,000 be entered for relator [plaintiff] and that she have execution for $1500 with interest from the date of demand."

I. Before going into the main question we take up a contention made for the respondents in opposition to the issuance of the writ, and made again upon the hearing. It is urged that the application for the writ of *certiorari* was delayed too long, and

Certiorari: Delay.

308 Mo. Sup.—9.

that the writ should be quashed for that reason. This contention is bottomed upon the fact that though the application was filed within thirty days after the overruling of relator's motion for a rehearing, it was not filed until after the mandate of the Court of Appeals had been transmitted to the clerk of the circuit court, and that relators had filed no request that the mandate be withheld, pending an application for the writ. The relators' motion for a rehearing was overruled on May 5, 1924, and the application for the writ was filed on June 3, 1924. The application itself did not allege any request made to withhold the mandate, and the respondents, in support of their reasons in opposition to the issuance of the writ, filed the certificate of the Clerk of the Court of Appeals showing that no request had been made to withhold the mandate, and that it had been transmitted on May 16, 1924.

Counsel in support of their contention under this head cite State ex rel. Berkshire v. Ellison, 287 Mo. 654. This record shows no such laches as appeared in that case. There, the application was not made until more than nine months after the overruling of the motion for a rehearing, and more than seven months after the circuit court had entered judgment upon the mandate. There is no showing made here that the circuit court had entered judgment upon the mandate. In the Berkshire case it was said that the question was then one of first impression in this court, and "one to be determined by reason rather than authority," and the fact was referred to "that with this court, this character of a writ of *certiorari,* is purely discretionary." It was concluded that the thirty-day period was a reasonable time within which parties should apply for a stay of mandate and get their application for the writ duly served and filed here, and it was further said that the application for stay of mandate "should shortly follow the overruling of the motion for rehearing." Undoubtedly that should be so, else, within the thirty days, the mandate might go down, and judgment be entered thereon. However,

under the circumstances here shown and in the absence of any showing that the judgment directed to be entered by the Court of Appeals was in fact entered by the circuit court, the relators should not be convicted of such laches as demands a quashing of the writ for the sole reason that no stay of the mandate was asked.

II.  The conclusions reached by the Court of Appeals were founded upon the state of the pleadings before it.  In that, it took into consideration the allegations of the answer, as well as of the petition.  The petition, after setting forth the official character of Lewis Scott and the execution and terms of the bond, charged a breach thereof —alleging that in January, 1923, there had been adjudged to Minnie Clinkscales, in a judgment duly rendered by the Circuit Court of Carroll County in a certain drainage district proceeding before that court, the sum of fifteen hundred dollars, which sum had afterward in April, 1923, been paid to Lewis Scott for the use of Minnie Clinkscales and to be paid to her by said Scott; that demand of payment had been made, and payment thereof refused.

The answer did not contain a general denial.  The answer admitted the execution of the bond, and that Lewis Scott, as circuit clerk, received said sum of $1500, "in payment for the right of way across and damage to the lands," thereinafter described, and stated that said sum was awarded by the judgment of the circuit court amending and confirming the commissioner's report in the proceedings had under the provisions of Article I, Chapter 28, Revised Statutes 1919, to assess benefits and damages in carrying out the plans of said drainage district, and in respect of the certain described lands, and set out so much of the judgment as was applicable to the particular lands described, showing Minnie Clinkscales as owner, and the total sum of $1500 awarded as the value of property taken for right of way, and damages to the remainder.  The answer then continued:

"The defendants further state that after the receipt of said sum of fifteen hundred dollars from the said drain-

age district the defendant Lewis A. Scott, as such circuit clerk, was notified that the relator, Minnie H. Clinkscales, was not the owner in fee simple of said real estate, but only the owner of an estate for and during the life of Robert Clinkscales and for and during her life or widowhood should she survive the said Robert Clinkscales; that the attorney for said drainage district notified the said defendant, Lewis A. Scott, that the said award of fifteen hundred dollars was made by agreement and was allowed as full compensation for the whole title to the right of way and the damage to all said land by reason of the construction of said improvements, and that said sum of money should be paid to all of the owners of said real estate, as provided by Article I of Chapter 28, Revised Statutes 1919, under which said district was organized.

"Defendants further state that all of the real estate above described was owned by Robert H. Clinkscales at the date of his death in January, 1890; that by his will said Robert H. Clinkscales devised said real estate to Robert Clinkscales for and during his natural life and after his death to the relator, Minnie H. Clinkscales, for and during her natural life or widowhood, and upon her death or re-marriage the same to go to the children of Robert Clinkscales; that at the date of the execution of said will, the said Robert Clinkscales had only one child, to-wit, Romeo Hughes Clinkscales, who is now living; that thereafter there was born to the said Robert Clinkscales and the relator, Minnie H. Clinkscales, a child that lived only a short time; that thereafter the said Robert Clinkscales conveyed all of his right, title and interest in and to the land above described to the relator, Minnie H. Clinkscales.

"The defendants further state that because of the premises aforesaid, the defendant, Lewis A. Scott, was uncertain and is still uncertain as to who is entitled to the said fifteen hundred dollars paid into his hands and has been at all times ready and willing to pay the sum to those legally entitled thereto, but could not determine

to whom said funds belong; that the defendant, Lewis A. Scott, here tenders and offers to pay into court the said sum of fifteen hundred dollars, to be distributed to whomsoever the court may decide to be in equity and good conscience entitled to the same." The defendants then prayed the court to order that defendant Lewis Scott pay said sum into court, that Minnie Clinkscales be restrained from further prosecuting the suit, and that she, and the alleged remainderman and the drainage district be compelled to interplead for said sum, and for general relief.

Then followed the plaintiff's motion for judgment on the pleadings.

The Court of Appeals set forth the fact, pleaded in the answer, that Minnie Clinkscales had excepted to the report of the commissioners, that her exceptions had been heard, and that the judgment had amended the report in respect of assessments of benefits against said lands, but not in awarding sums for rights-of-way and for damages, and that the judgment was one finally allowing to her said aggregate sum as owner and exceptor in said proceeding.

The Court of Appeals held that the sole question for review was the meaning and effect of the decree in the drainage district proceeding, and stated the contention of appellant there. It was that the decree in the drainage proceeding awarded said sum personally to Minnie Clinkscales. The court construed the judgment as one which clearly and unmistakably decreed that she was the owner of the lands taken and damaged, and was entitled to the funds in question individually and not as trustee for the remainderman; that the answer was a collateral attack upon the judgment; and that it was not within the province of the circuit clerk to question the decree.

The respondents urge that the answer did not deny the allegations of the petition; that it set up no defense; and that the answer did not state a case for interpleader. These contentions may be laid aside at this time, because the result reached by the Court of Appeals did not rest

upon those grounds, but upon the ground that the judgment as shown by the pleadings as a whole was one awarding the damages involved to Minnie Clinkscales; that she was the only party plaintiff in the proceeding upon the exceptions to the report; that it does not appear there were any steps taken to have the remainderman included as a party thereto; that thereby it was decreed that she was the owner of the lands and entitled to the fund individually. If the decree must be so regarded, then the answer was an attempted collateral attack to which the judgment is not subject.

Is the decree an adjudication that Minnie Clinkscales was the owner of the land, and personally entitled to the fund, to be paid in, and actually paid in? The Drainage Act is a code unto itself in respect to the manner of organization of drainage districts, the condemnation of lands by such districts, and the review of proceedings had under the act. [Mississippi & Fox River Drainage District v. Ackley, 270 Mo. l. c. 173; State ex inf. v. Norborne Land Drainage Dist. Co., 290 Mo. l. c. 131; In re Big Lake Drainage District v. Rolwing, 269 Mo. 169; State ex rel. v. Hughes, 294 Mo. 1.]

Some of the statutory provisions should be noticed. Section 4415, Revised Statutes 1919, is as follows: ''The word 'owner' as used in this article shall mean the owner of the freehold estate, as appears by the deed record, and it shall not include reversioners, remaindermen, trustees or mortgagees, who shall not be counted and need not be notified by publication, or served with process, but shall be represented by the present owners of the freehold estate in any proceeding under this article.'' The validity of this section is not made an issue, nor is there any question as to the proceedings had being otherwise than duly had, under the provisions of the act. The answer alleged that they were so had, and the motion for judgment was an admission that they were.

Under Section 4378 the articles of association are required to state ''the names of the owners of lands in said district, together with a description of the lands,

State ex rel. Scott v. Trimble.

owned by each." By Section 4389, the circuit clerk is required to give the commissioners appointed a list of the lands, and the names of the owners as they were contained in the articles of association at the time of the decree incorporating the district. Under Section 4390, the report of the commissioners must show the name of the owner of the property affected by their action. The assessments are to be made as found to accrue to each governmental lot, forty-acre tract or other subdivision of land according to ownership. By Section 4391, all persons interested are to be notified, generally, of the filing of the report, by publication, describing all the lands, but not naming the owners. By Section 4392, any owner of land may file his exceptions to the report, which exceptions are to be heard and determined by the court. Under Section 4405, the district, in order to avail itself of the aforesaid proceedings for taking lands, must pay the amount awarded, to the owner, or to the circuit clerk for the use of the owner of any land, before appropriating such land, and do so within five years, otherwise all such proceedings to take land shall abate. By the provisions of Section 4405, the title, use and enjoyment of the land so acquired by the district passes from the owner and vests in the district, upon payment of the price awarded to the owner, or to the circuit clerk for the use of the owner. The title does not pass by or upon the judgment of condemnation, but upon payment of the price and appropriation thereunder. [Land and Improvement Company v. Kansas City, 293 Mo. 674; Silvester v. City of St. Louis, 164 Mo. 601.] In the present case, it may be considered that the fee simple title passed upon payment of the money awarded. There is no question raised as to that. The life tenant, alone, filed exceptions to the report, but publication under Section 4391 to all persons interested, gave the court jurisdiction to pass upon the report and to bind the interests of all such persons, whether they actually appeared or not, and whatever their interests, and although not named in the notice. [Troeger v. Roberts, 284 Mo.

363; State ex rel. Coleman v. Blair, 245 Mo. 680; Barnes v. Construction Company, 257 Mo. 175.]

The Court of Appeals seems to emphasize somewhat the fact that the life tenant alone filed exceptions and alone was a party to the hearing and determination of the exceptions. But the owner of the present freehold estate, under the provisions of Section 4415, represented the remainderman, and he none the less was before the court so far as his interest was affected by that proceeding, the primary purposes of which was, on the one hand, to have judgment authorizing the taking of the land with all interests of all persons therein, and on the other, the fixing of a sum to be awarded in satisfaction of the interest of all persons in the land. Beyond doubt in the proceeding in question, whose regularity is not questioned, and is conceded under the pleading, and in the opinion by the Court of Appeals, the interests of both life tenant and remainderman in the land were laid hold of; and it is equally clear that when the gross sum awarded for all interests in the several tracts was paid in, it stood in lieu of the land, and the life tenant and the remainderman had the same interest in the fund they formerly had in the land. [Kansas City, S. & M. Ry. Co. v. Weaver, 86 Mo. 473.] It was not necessary, nor was it within the province of the court, in that proceeding, to determine the rights or respective interests, *inter sese,* of the owners of the land. There were no adversary pleadings as between the owners, upon which the court could determine, and declare in that proceeding, their respective rights in the land. The judgment entered for and against the owner of the freehold, was not, for the purposes of appropriation, and payment, personal and individual, to the present freeholder, but was collective and inclusive of all persons interested in the land at the time the judgment was rendered, whether they were reversioners, remaindermen or mortgagees. Such a judgment is potentially, but not absolutely final, because the condemnor may never act upon it; and it is not individual or personal to the landowner party, for the rea-

son that if title passes from him before the appropriation and payment of the award, the right to the award passes also with the title to the lands, unless he had reserved it.

"Where land is sold subsequent to the award, but before the payment is made or security given by the condemnor, and the conveyance is silent as to the right to damages, such right passes to the purchaser." [20 C. J. 862; Hamilton v. Big Medicine Drainage Distr. No. 1, 261 S. W. 940; Land & Improvement Co. v. Kansas City, 293 Mo. 674; Silvester v. St. Louis, 164 Mo. 601.]

We are of the opinion that the holding of the Court of Appeals that the judgment of the Circuit Court of Carroll County was a personal and individual judgment in favor of Minnie Clinkscales is in conflict with the ruling of this court in Troeger v. Roberts, 284 Mo. 363. In that suit, the plaintiff, who was the wife of William Troeger, brought suit to enjoin the contractor and the drainage district from constructing a ditch over land owned by her, on the ground that the right-of-way had not been acquired. Her contention was that she had not been made a party to the proceedings and that no damages had been awarded her. Her husband, William Troeger, had been named as the owner of the land in the proceedings had, which were under the provisions of Sections 5548-5588, Revised Statutes 1909, known as the County-Court Act. An award of $1088.50 had been made to William Troeger, as owner named. The trial court granted an injunction "until such time as the defendants paid the plaintiff" the said sum awarded. The case came to this court upon the appeal of the plaintiff, and the judgment was affirmed. The effect of the holding was that while William Troeger was named as owner in the report, and as such in the judgment, the purpose of the proceeding, and the effect of the judgment, was to fix the value of the land taken and the damages to other land, and not merely to fix the value of the interest, or amount of damages to the interest, of William Troeger, who in fact was not the owner. Under Sec-

tion 5587, Revised Statutes 1909, the notice to landowners
of the filing of the report of the viewers was required
to be by name to those mentioned in the report, as own-
ing lands, or to those ascertained in any manner to be
owners, and also to run to all other persons interested.
It was said in Troeger's case, at page 371, that the stat-
ute (Sec. 5584, R. S. 1909) did not make requirement that
there should be an assessment of damages in favor of a
person to be named in the report. But, necessarily upon
the final hearing pursuant to the giving of the notice
above mentioned to every person by name, "returned by
the engineer and viewers as the owner of every lot or
parcel of land affected "(Sec. 5587, R. S. 1909), the per-
son was designated in his relation of owner of the ap-
propriate lot or parcel of land. Notwithstanding that
the assessment or award was not primarily to a person,
but was appurtenant to the land. The award was made
"in favor of land." Under the Circuit Court Act, un-
der consideration here, the principle, and the actual re-
sult, are the same. The proceeding under each is one
*in rem.* [City of St. Louis v. Koch, 169 Mo. 587.] The
decision in Troeger's case proceeds upon that theory.
In that case a contention was that there had been no
assessment of damages made in favor of the plaintiff.
Whether that point could properly be made in the col-
lateral proceeding was not determined, because unneces-
sary, but it was held that in the very nature of the pro-
ceeding had, the assessment of damages in favor of the
plaintiff's land was in fact an assessment in favor of
the plaintiff, the court having acquired jurisdiction of
the person and property of the plaintiff. This was so
because she was the actual owner. An assessment in
favor of the land was an assessment in favor of the
owner, although the owner "was not mentioned in the
report and order" and though, in that case, the name of
another, not the owner, was in fact mentioned as such.

In its holding that the judgment of the Carroll Cir-
cuit Court was an adjudication that Minnie Clinkscales
was the owner of the lands, that is, the owner in exclu-

sion of any interest in remainder or otherwise, and that the answer is a forbidden collateral attack upon that judgment, the opinion is not reconcilable with the rulings of this court in Charles v. White, 214 Mo. 187, and Blair v. Blair, 247 Mo. 61. The Carroll Circuit Court had no such issue before it, made either by the provisions off the act, or by any pleadings filed in the proceedings. It was not undertaking to determine and declare title, farther than to see to it that the owner of the freehold estate as shown by the record was named as a party, and that in passing upon the report and exceptions thereto, the prerequisite notice to "all persons interested" had been published. The ultimate and essential purpose of the proceeding was to ascertain and adjudge how much money must be paid, in the future, if appropriation of the land should be made by the condemnor, to those persons, who, at such time, might be the owners of the land. There could have been no thought in the mind of the court that the judgment confirming the award was an adjudication of the title to the land beyond what has been heretofore indicated. The very provisions of the statute exclude the idea, or any purpose, that in the proceeding resulting in the award, the court shall determine and adjudicate the interests of remaindermen or mortgagees, and especially so when no pleadings to that end were filed; and the contention that by this statutory proceeding the court transforms a life estate into an estate in fee is untenable.

Charles v. White, 214 Mo. 187, was a suit to quiet title. The title involved depended upon the validity of a judgment rendered in a proceeding brought to set aside a conveyance as being in fraud of creditors. The conveyance sought to be set aside was one conveying lands to a life tenant and remaindermen. The only issue as to the creditors was whether the conveyance was made to defraud them. The trial court determined that issue, and did not stop there, but determined the title as between the life tenant and the remaindermen, adjudged the life tenant to be the owner, and divested title out of

the remaindermen. It was held in Charles v. White, the suit to quiet title, a collateral attack upon the other judgment, that because there was no issue raised between the defendants, in the suit brought by the creditors, the court had no power to adjudicate the interest of those defendants as between themselves, and that the judgment was subject to collateral attack. The subject is thoroughly discussed in the opinion rendered by Judge GANTT. In substance it was held that pleadings are the foundation for a judgment, and that the court had no jurisdiction to determine the interests of defendants *inter sese*, who were not adversary parties, where a determination of their interests was not embraced in the pleadings. In the instant case the report of the commissioners "was in no sense a pleading." [Drainage District v. Campbell, 154 Mo. l. c. 160.]

The exceptions filed by the life tenant, who, in doing so, by force of statute, and by virtue of her freehold interest represented the remainderman, was not a pleading raising any issue as to title, but was solely an objection to the amount awarded in the report. In that proceeding the statute did not contemplate that the question whether Minnie Clinkscales had more than a life estate should be an issue, and in fact there was no such issue, and necessarily the court did not decide such issue. Beyond that, the statute, by providing that the sum awarded could be paid to the circuit clerk, at any time, thereafter, in a period not exceeding five years, for the use of the owners, inevitably had in view the probability that the owners might not be the person or persons named in the court's decree. The payment of the award does not operate to divest title as of the date of the decree. [Land and Improvement Co. v. Kansas City, 293 Mo. l. c. 680.]

In this case we cannot hold that the matter here in dispute was put in issue and tried in the drainage proceeding. Not only does the record fail to show affirmatively that such an issue was made, but the statutory nature of the proceeding excludes the idea that it was.

On these grounds we hold that the ruling of the Court of Appeals is in conflict with the decisions of this court in Troeger v. Roberts, Charles v. White, and also in Blair v. Blair, supra.

III.   The respondents, as has been heretofore mentioned, urges that the petition stated a cause of action in Minnie Clinkscales, that the answer did not contain a denial, and stated no case for interpleader.   The circuit clerk, by the drainage statute, and by virtue of his office was made a trustee of the fund for the use of the owners.   He could not do otherwise, and did not do otherwise than admit the receipt of the fund in his official and trust capacity, and state the nature of the proceeding out of which the fund arose, and the ground of his uncertainty as to his duty in the premises.   This whole proceeding and the claims put forth for Minnie Clinkscales show that she was and is claiming the fund personally and absolutely, yet, in the state of the pleadings, it is admitted that she represented the remainderman in respect of his interest.   In response to what was set up in the answer, she asked for judgment for herself, personally.   The drainage district having paid the money to the circuit clerk was acquitted of further responsibility.   The clerk as trustee of the fund, holding it for the use of the owners of the land had the right to invoke and by his answer did properly invoke the aid of the court to determine and declare the ownership, and use of the fund to be paid out by him.

*Clerk as Trustee:*

It is urged here that the judgment of the Court of Appeals, upon the whole and in result, is right: that Minnie Clinkscales as trustee was authorized by statute (Sec. 1156, R. S. 1919) to sue in her own name.   But, the position taken by her, and the conclusion of the Court of Appeals, is a repudiation of any relation of trust on her part.

It is further suggested that under Section 13421, Revised Statutes 1919, the beneficiary may by his petition have the trustee give bond if he wishes to do so.   Such

a petition would seem belated in the face of the judgment in the drainage district proceeding as it was construed by the Court of Appeals, and in face of the judgment which the Court of Appeals directed to be entered, in the suit for the fund. The issue as presented by the pleadings involved the passing of a fund from a trustee to another person who also bore a trust relation to that fund. The judgment of the circuit court, in passing the fund, placed upon it the proper indicia of its ownership and use, and was right.

It follows that the record of the Court of Appeals should be quashed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Atwood, J.,* not sitting; *Graves, J.,* in the result.