JASPER LAND & IMPROVEMENT COMPANY v. KANSAS CITY, Appellant.

Division One, April 8, 1922.

1. **KANSAS CITY CHARTER: General City Taxes on Land: Liability of Owner.** Even though a personal judgment could not be rendered against the owner for general city taxes upon real estate under the Kansas City Charter 1908, nevertheless such taxes are imposed upon the owner on account of his ownership, and the property is resorted to for the purpose of ascertaining the amount of such taxes.

2. ———: ———: **Land Condemned: Title When Divested.** Although Kansas City Charter 1908 provides that upon the return of a verdict in a condemnation proceeding a judgment entered in confirmation thereof shall be "that the city have and hold the property sought to be taken for the purpose specified in the ordinance providing for the improvement and pay therefor the amount assessed against the city and full compensation therefor," such

judgment does not divest the owner's title and vest it in the city, but this result is only accomplished when the city actually pays the compensation fixed therefor, notwithstanding the fact that, after the rendition of such judgment and before the payment of such compensation, the owner is actually deprived of many of the rights incident to the free and unfettered ownership of such property.

3. ———: ———: ———: ———: **Relation.** The fact that, under the Kansas City Charter 1908, the title of the city to land condemned for public use, upon payment of the compensation therefor fixed by the verdict and judgment in the condemnation preceeding, relates back to the date on which the ordinance providing therefor took effect, does not make the payment of such compensation relate back to the date of such judgment and operate to divest the owner's title as of that date.

4. ———: ———: ———: **City May Deduct Tax from Compensation.** Where land was condemned for public use under Kansas City Charter 1908, and the judgment confirming the verdict in the condemnation proceeding was rendered on December 5, 1917, and such land was assessed on January 1, 1918, under said charter for general city taxes for the year 1918, the city had the right, on December 1, 1918, when paying the compensation fixed for said land by such verdict and judgment, to deduct therefrom the amount of such taxes and interest thereon, levied pursuant to such assessment, they being then past due and unpaid and being a lien on such land.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

REVERSED.

*E. M. Harber, J. C. Petherbridge* and *M. A. Fyke* for appellant.

(1) Sec. 21, Art. II, Mo. Constitution, provides ''that private property shall not be taken or damaged for public use without just compensation; and until the same shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested.'' State ex rel. v. Hug, 44 Mo. 116; Stacey v. Vermont Co., 27 Vt. 38; Const. Co. v. Clarke, 193 S. W. 546; Kansas City v. Ward, 134

Mo. 183; Buchanan v. Kansas City, 208 Mo. 682; Kansas City Charter, sec. 3, art. 5. (2) The acceptance by plaintiff of the condemnation money, less the city tax, was tantamount to a voluntary payment by plaintiff of the tax; therefore plaintiff is not entitled to recover from the city the tax so voluntary paid by it. County of Lewis v. Tate, 10 Mo. 650; Walker v. St. Louis, 15 Mo. 653; Christy's Admr. v. St. Louis, 20 Mo. 143; Couch v. Kansas City, 127 Mo. 436; Clifton v. Harris, 179 Mo. App. 272.

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) The action is not for the recovery of taxes paid, but is for the balance due upon a judgment in condemnation. (2) Under the Constitution and the Charter of Kansas City, the city's title, upon the affirmance of the judgment on appeal and the payment of the compensation awarded, related back to the date of the confirmation of the jury's verdict by the trial court, and the taxes attempted to be assessed and levied could not lawfully be offset against nor deducted from plaintiff's judgment. Charter of Kansas City, Art. VI, sec. 6. Plum v. Kansas City, 101 Mo. 525; Martin v. St. Louis, 139 Mo. 246; Brunn v. Kansas City, 216 Mo. 108; Municipal Securities Corp. v. Kansas City, 265 Mo. 252; In re Paseo, 78 Mo. App. 518; Currie v. Bangor Ry. Co., 105 Me. 529; City Safe Deposit Co. v. Omaha, 79 Neb. 446; State ex rel. v. Railroad, 85 Minn. 416; School District v. Smith, 168 S. W. 1088; Charles Co. v. Hughes, 105 Ga. 1; Parks v. Boston, 15 Pick. (Mass.) 198; Fitchburg v. Railroad Co., 134 Mass. 579; Sherwin v. Wigglesworth, 129 Mass. 64; In re Mayor of New York, 69 N. Y. Supp. 742, 167 N. Y. 627.

RAGLAND, C.—This is a suit to recover the remainder of an amount awarded plaintiff in a condemnation proceeding as compensation for real estate taken for street purposes. Defendant demurred to the petition. The demurrer being overruled, it declined to plead further, and judgment was rendered against it for the

amount claimed with interest.   From that judgment it appeals.

The facts disclosed by the petition are briefly these: On May 9, 1917, an ordinance of Kansas City was duly enacted which provided for the opening, widening and extending of certain streets and avenues as enlarged approaches to the Union Station, and condemning the necessary lands for such purposes, including certain lands belonging to plaintiff.   On June 2nd following, a certified copy of the ordinance, together with a plat show-ing the lands proposed to be taken and the benefit dis-trict described in the ordinance, was filed in the Circuit Court for Jackson County.   Thereafter a trial was had for the assessment of damages and benefits before a board of commissioners, in accordance with the provis-ions of the Charter of Kansas City.   A verdict was re-turned October 10, 1917, in which plaintiff was allowed $395,396 as compensation for such of its lands as were to be taken.   Motions for a new trial were overruled December 5, 1917, and judgment was rendered, conform-ably 'to charter requirements, confirming the verdict of the board of commissioners.   Thereafter appeals to this court were taken by various property owners, all of which were dismissed May 18, 1918.

On January 1, 1918, plaintiff's real estate, so pro-posed to be taken for street purposes and for which the compensation had been determined by the condemnation proceeding, was assessed by Kansas City, as was all oth-er property in the city subject to taxation, for city taxes for the year 1918.   The taxes thereafter levied pursuant to such assessment amounted to $1,073.   December 1, 1918, Kansas City paid plaintiff all the compensation awarded the latter in the condemnation proceeding but $1,100, which the city retained as due it on account of the taxes just mentioned and interest thereon.

The principal question arising on this record is whether the real estate out of which the controversy grows was subject to taxation as private property on January 1, 1918, or whether on that date it had become an integral part of Kansas City's system of streets and

thoroughfares.    The respondent claims that it was divested of title by the judgment rendered in the condemnation proceeding, December 5, 1917; while appellant contends that such divestiture did not occur until the compensation was paid on December 1, 1918.

I.    A tax, of the kind involved in this proceeding, is a contribution required of its citizens by the State. And while we speak of property as being subject to taxation, it is the individual who pays the tax, and not his property.    The property is resorted to for the purpose of ascertaining the amount of the tax with which the owner must be charged; and when ascertained it is imposed upon the person of the owner on account of his ownership of the property.    And this is true even when a personal judgment cannot be rendered against him therefor.    [State v. Snyder, 139 Mo. 549, 552; Gitchell v. Kreidler, 84 Mo. 472, 476.]    This general principle which fixes personal liability on the owner of property for the payment of taxes, aside from statutes expressly imposing it, is given distinct recognition in the provisions of the Charter of Kansas City relating to revenue and taxation, which we do not deem it necessary to quote.

*Taxes: Personal Obligation.*

II.    We come now to consider whether respondent was liable to Kansas City for taxes because of ownership, on January 1, 1918, of the land giving rise to this controversy.    The charter provides that upon the return of a verdict in a condemnation proceeding a judgment entered in confirmation thereof shall be, "that the city have and hold the property sought to be taken for the purpose specified in the ordinance providing for the improvement and pay therefor the amount assessed against the city and full compensation therefor."    Such judgment, respondent insists, immediately divests the landowner of the title and vests it in the city, for the contemplated public use, subject to the payment of compensation.    In this connection it is

*City Taxes: Levied Against Condemned Lands.*

said that after the rendition of such judgment the owner's holding is merely permissive, that his status is in effect that of a mortgagee in possession. [In re Paseo, 78 Mo. App. 518.] Some such analogies have been drawn in cases dealing with the elements that go to make up "just compensation," but we are here considering what effect such a judgment had with respect to transferring the actual ownership of the land. So far as the title to the land was concerned the condemnation proceeding was still *in fieri* on January 1, 1918. Not only were appeals depending, but the city had a right under its charter to abandon the contemplated public improvement, by repealing the ordinance providing therefor, at any time before the judgment for benefits was paid. And entirely aside from that, the Constitution explicitly provides that until the compensation shall be paid to the owner or into court for his use "the property shall not be disturbed or the proprietary rights of the owner therein divested." [Constitution, Art. II, sec. 21.] Its language is so plain and unambiguous that there is no room for construction. There can, therefore, be no divestiture of the owner's title or proprietary rights through the exercise of the power of eminent domain except, and until, actual payment be made of compensation previously ascertained in the manner required by law; until such payment is made the owner's rights remain unimpaired. [Kansas City v. Ward, 134 Mo. 172, 183; Buchanan v. Kansas City, 208 Mo. 674, 682; State v. Hug, 44 Mo. 116, 120.]

Respondent argues, however, that since the judgment of condemnation, in its practical working, actually deprives the owner of many of the incidents of ownership, as for an example, the right to sell, or incumber, or improve, or lease for a definite term, the constitutional provision, which was adopted for his protection, should not be held to mean that he is not in fact divested of his proprietary rights before the payment of compensation; on the contrary it should be construed as simply providing for the retention by the owner of a proprietary interest in the property as security for such payment. The trouble with this position is that the relation of

debtor and creditor does not at any time exist between the condemnor and the landowner. Within the contemplation of the Constitution the taking of private property for a public use upon the payment of just compensation is a *cash* transaction. While time is necessarily consumed in determining what the just compensation is, yet when it is ascertained the condemnor is under no obligation to pay it. He may thereafter, within such time as is prescribed by the law applicable to the particular proceeding, exercise his option to pay and take the property, or abandon it. The landowner's plight, pending a proceeding to condemn his property for a public use, is aptly described by LAMM, J., in Brunn v. Kansas, 216 Mo. 108, 119:

"The filing of the petition to condemn and notice to the defendants was in the nature of a *caveat* to all concerned, including the world at large, that the city had laid its hands on the property and that the proceedings might ripen into a sequestration of it. Beginning from that time the owner's right to sell would be whittled away, his right to improve and develop the property would be in abeyance. After judgment and pending appeal he would hold but a base or qualified fee subject to all inconvenience and injury having their root in that fact. Finally, when the proceedings were dismissed by an election of the city not to go on with its scheme, the landowner, pinched in pocket, would have nothing but his memory of troubles and detriment suffered. But all these things are but incidents of the exercise of the right of eminent domain, to which right every rood of land in a civilized state is subject."

From what has been said it must be reasonably clear that the condemnation proceeding and the judgment therein merely hampered respondent in the use of its property; they did not deprive it of ownership, and it was the ownership, primarily, and not the productiveness, or the unfettered use of the property, that gave rise to respondent's liability for the payment of the tax.

III.   Respondent presses still another argument: That by relation the payment of the award by the city on

December 1, 1918, operated to divest respondent of title
as of the date of the judgment.   With respect to this,
Relation.      it should not be forgotten that relation is merely
               a fiction of the law resorted to for the promotion
of justice.   [Gibson v. Chouteau, 80 U. S. 92, 100.]   It
could no doubt have been properly invoked by the city,
upon the taking over of the land, to cut off claims made
through or under the former owner adversely affecting
the title, had any such arisen or had their inception
subsequently to the date of the judgment of condemnation.
It could likewise have been rightfully made use of by the
respondent to prevent the impairment or reduction of
its compensation as fixed and determined by the judg-
ment on account of conditions subsequently arising, as for
example, the fastening upon it of the lien of a special
tax bill for benefits accruing on account of public im-
provements which were not in contemplation, or were
not considered, in the assessment of such compensa-
tion.   [In re Paseo, supra; Municipal Securities Corpo-
ration v. Kansas City, 265 Mo. 552.]   But we are not
persuaded that there is any principle of justice or equity
which calls for a resort to this "fiction" in order to re-
lieve respondent from the obligation of making such con-
tribution to the support of municipal government as is
required by the plain letter of the law.

IV.   When the city elected to take over the real es-
tate and pay the compensation previously ascertained,
the tax for the year 1918 was due and owing by re-
spondent, and had by operation of law become a lien
                       on the property in the city's favor.   In
Condemnation           these circumstances the city had the right
Award: Reduced
by Taxes Due.          to apply so much of the compensation—
                       purchase price—in its hands as was neces-
sary to satisfy the lien, and then pay the remainder to
the respondent.   This it did.   As these facts appear on
the face of the petition the demurrer should have been
sustained.

The judgment of the circuit court is therefore re-
versed.   *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAG-
LAND, C., is hereby adopted as the opinion of the court.
All of the judges concur, except *James T. Blair, J.*, not
sitting.