MARY H. G. HOUCK, Appellant, v. LITTLE RIVER DRAINAGE DISTRICT —119 S. W. (2d) 826.

Division One, September 17, 1938.

*Giboney Houck* and *Benson C. Hardesty* for appellant.

*Oliver & Oliver* for respondent.

BRADLEY, C.—Plaintiff filed petition under Section 1347, Revised Statutes 1929 (Mo. Stat. Ann., sec. 1347, p. 1550), to have damages ascertained for the alleged wrongful taking of her land by defendant. A demurrer to the petition was sustained, the petition dismissed and plaintiff appealed.

Plaintiff alleged that the taking of her land in the manner alleged violates her constitutional rights under Section 21 (taking or damaging private property for public use) and Section 30 (due process clause), Article 2, Constitution of Missouri. Also, it is alleged that plaintiff's rights (due process and equal protection of the law) under the Fourteenth Amendment, Constitution of the United States, have been violated.

It is alleged that defendant is a public corporation organized as a drainage district November 30, 1907, in the Butler County Circuit Court; that plaintiff is the owner of the S½ of the NW¼ and the SW¼ of Section 30, Township 30, Range 14, Scott County, subject to the easements of the rights of way of the Rock Levee road, the Ramsey Creek Diversion levee, and the Ramsey Creek Diversion channel; that the two last mentioned rights of way parallel the Rock Levee road and are on the east side thereof, and that said two rights of way are used as a part of defendant's drainage plan; that by the execution of defendant's original drainage plan her lands were damaged, and that said damage was paid by defendant; that now in pursuance to an amendment and change of defendant's drainage plan, defendant is moving the Ramsey Creek Diversion levee from the east side of the Rock Levee road, which her lands adjoin and have access to, and is constructing in lieu of the Ramsey Creek Diversion levee, a new levee on the west side of said road; that plaintiff's land does not adjoin the new levee site, and will not have access to said road after construction of the new levee and relocation of the road; "that defendant is constructing said new levee so that same will rest on and occupy said road's right of way for its entire width of 60 feet and its entire length (about one-half mile) through plaintiff's said lands and so as to destroy said road for road purposes and completely sever all connection and access of all of plaintiff's lands with any road whatever;" that her lands lie outside defendant district, and will be damaged by being wholly severed from said road.

In her petition, plaintiff refers to a certain map (of defendant's amended plan) on file in the Butler County Circuit Court, which map shows the *locus in quo*, and makes the map (copy of which is in the abstract) a part of her petition.

Plaintiff alleges that as a result of the amended plan, being performed and to be performed, her lands have been and will be damaged; that under the amended plan, defendant "is trenching upon the private rights of plaintiff and devoting said public right of way (of the road) to a use so incompatible with said easement for road purposes as to destroy said easement and wholly destroy said road for road purposes for which the same was originally constructed and is now existing across plaintiff's said lands, and that defendant is thereby imposing a new and additional servitude on and wholly appropriating plaintiff's servient estate in her land lying in said road's right of way, such appropriation of and damage to said servient estate in the land lying in said road right of way and such damage to the said remaining lands of plaintiff, all being done by defendant without making any compensation to plaintiff or seeking any judicial proceeding for compensation to plaintiff and for public use, to-wit: The public use of maintaining the works and improve-

ments provided for in its (defendant's) plan for drainage and in order to prevent the lands in said drainage district from being subject to overflow by the flood waters of the Mississippi River; that plaintiff has made a diligent effort to agree with the defendant as to what is proper and reasonable compensation for the plaintiff's said land lying in said roadway that defendant is appropriating and taking, as aforesaid, and for damages to plaintiff's remaining land consisting of over 212 acres in said Section 30, that is by defendant now about to be cut off and severed from said Rock Levee road, as aforesaid, but that plaintiff has been unable to agree with the defendant upon the proper compensation to be paid to plaintiff.''

It is further alleged ''that defendant has not heretofore attempted to condemn plaintiff's said land lying in said Rock Levee road nor to have plaintiff's said damages to her said remaining land assessed in any judicial proceeding and that this suit is brought for the purpose of having a judicial assessment and award of all such damages from such taking and damaging of plaintiff's said lands.''

The prayer of the petition is for the appointment of commissioners to determine and assess damages.

The demurrer alleges that plaintiff's petition fails to state facts sufficient to constitute a cause of action in this:

''(1) That plaintiff's alleged claim for damages is based upon the alleged taking and use by defendant of a strip of land described by plaintiff as being 60 feet wide and known as the Rock Levee road, the reversionary title to which is alleged to be in plaintiff, 'subject to the easement of the right of way of a macadamized road of high standard known as the Rock Levee road.'

''(2) Plaintiff further alleges in her petition 'that defendant is constructing said new levee so that same will occupy and rest on and occupy said road's right of way for its entire width of 60 feet and its entire length through plaintiff's said lands and so as to destroy said road for road purposes.''

''(3) Defendant says that notwithstanding said allegations, plaintiff has no cause of action against this defendant, because Section 10768, R. S. Mo. 1929, sets forth the powers of drainage districts, such as the defendant, and among other powers granted expressly authorizes drainage districts 'to construct any and all of said works and improvements (ditches and levees) across, through or over any public highways. . . .'

''And so defendant demurs to plaintiff's petition and asserts that it has done nothing, as charged in plaintiff's petition, for which it did not have statutory authority.

''(4) For further demurrer to plaintiff's petition, defendant says that the full power to control the public highways of the State is vested in the State itself and that no one other than it has any power

or control over said highways, except as and to the extent granted the several civil subdivisions of the State by legislative action.

"That plaintiff nowhere alleges in her petition that either the State of Missouri or Scott County is making any objection to the use of said strip of land for the purpose of constructing said setback levee and the shifting of the location of said road as shown on the plat referred to in plaintiff's petition, and that they alone have power to complain of the use of said part of said highway for the purposes aforesaid."

From the petition and the map it appears (beginning on east side) that the Ramsey Creek Diversion channel, the Ramsey Creek Diversion levee, the Rock Levee road, and the new setback levee are all parallel and extend from the northwest to the southeast and that (considering the direction west) the center line of the net setback levee is 300 feet west of the center line of the Ramsey Creek Diversion levee; that the diversion channel, diversion levee and the rockroad (approaching from the northwest) pass across the southwest portion of that part of plaintiff's land lying in the southwest quarter of Section 30. It will be observed that the petition alleges that "no lands of plaintiff adjoin or have access to" the west side of the rockroad. In the brief plaintiff says that "she owns 212 acres extending (northeast) in a body from the west line of the old Rock Levee road."

Plaintiff alleges, as appears above, that the new setback levee will "destroy said road for road purposes and completely sever all connection and access to all of plaintiff's said lands with any road whatever." Defendant says that this allegation is contradicted by the map which shows the relocation of the road on the west side of the net setback levee.

Defendant makes three contentions, viz.: (1) That by condemnation it acquired the fee title to the land occupied by the right of way of the Ramsey Creek Diversion channel and levee, and that "plaintiff cannot claim any servient estate in the right of way of the old road as against the district, . . . because the . . . district became the complete owner for district purposes of the adjacent land to the road; . . . (and) that if there is any reversionary interest in the old road bed it reverts to the district;" (2) that defendant had the right to take the rockroad right of way strip, without compensation to plaintiff, under Section 10768, Revised Statutes 1929 (Mo. Stat. Ann., p. 3496); and (3) that plaintiff cannot complain because of Section 11014, Revised Statutes 1929 (Mo. Stat. Ann., sec. 11014, p. 3656).

Defendant district was organized under Article 1, Chapter 41, Revised Statutes 1909 (Secs. 5496 et seq.), providing for the organization of drainage districts in the circuit court. The article was amended in 1911, Laws 1911, pages 205-222. In 1913 (Laws 1913, p. 232 et seq.),

the whole article, with the Amendments of 1911, was repealed, and a new article enacted. Section 5513, Revised Statutes 1909, among other things, provided: "Whenever the commissioners award to any owner of land, as damages to said land, the full market value of such land, and the amount of said award is paid for by said district, then, and in that event, the title, use, possession and enjoyment of *said land* so condemned shall pass from said owner and be vested in said district, and subject to its use, profit, enjoyment and final disposition in the same manner and with like effect as lands belonging to the county." (Italics ours.)

In the 1913 Act (Laws 1913, p. 250, sec. 29) that part of Section 5513, Revised Statutes 1909, above quoted, was changed to read as now found in Section 10772, Revised Statutes 1929 (Mo. Stat. Ann., sec. 10772, p. 3500), and is as follows: "Whenever any land is acquired by any district under the provisions of this article and the price of such property has been paid the owner by the district, the title, use, possession and enjoyment of such property shall pass from the owner and be vested in the district, and subject to its use, profit, employment and final disposition." The right of way of Ramsey Creek Diversion channel and levee was acquired by condemnation under the law as it was in 1909, and defendant states in its brief that it was acquired in 1912.

State ex rel. Scott v. Trimble et al., 308 Mo. 123, 272 S. W. 66, was in certiorari to quash the opinion in State ex rel. Clinkscales v. Scott et al., 216 Mo. App. 114, 261 S. W. 680. The Clinkscales case was a suit on the official bond of Scott, who was circuit court clerk, for failure to turn over $1500 to Clinkscales. The $1500 was paid to the clerk in condemnation proceedings by a circuit court drainage district. The clerk's defense for not turning over the $1500 to the plaintiff (Clinkscales) was that she was not the owner of the fee in the land condemned, but held only life estate. In the condemnation proceeding the plaintiff was awarded the $1500 without reference to the character of estate she held. The remainderman was not a party to the condemnation proceeding, and there was no appeal from the judgment in that proceeding. In the suit on the clerk's bond, the trial court (sustaining a motion by plaintiff for judgment on the pleadings) found for her, but ordered that execution issue in her favor "for herself and as trustee for remainderman." The plaintiff sought to have the judgment modified so as to eliminate the remainderman, but her motion was overruled and she appealed. The Court of Appeals held that the answer of the clerk, pleading the interest of the remainderman, was a collateral attack on the condemnation judgment, and reversed and remanded the cause with directions to enter judgment for plaintiff. Certiorari was granted on the petition of the clerk, and this court quashed the opinion by the

Court of Appeals. In the opinion by this court the following language was used (308 Mo. 123, 272 S. W. l. c. 69) :

"By the provisions of Section 4405 [R. S. 1919 (now Sec. 10772)] the title, use, and enjoyment of the land so acquired by the district passes from the owner and vests in the district, upon payment of the price awarded to the owner, or to the circuit clerk for the use of the owner. The title does not pass by or upon the judgment of condemnation, but upon payment of the price and appropriation thereunder. [Jasper Land & Improvement Co. v. Kansas City, 293 Mo. 674, 239 S. W. 864; Silvester v. St. Louis, 164 Mo. 601, 65 S. W. 278.] In the present case it may be considered that the fee simple title passed upon payment of the money awarded. There is no question raised as to that."

So it appears that the question as to whether or not a circuit court drainage district acquires by condemnation the absolute fee, to the exclusion of any rights of the condemnee, was not in issue in the Scott case. The present case is to have commissioners appointed to determine damages for superimposing an additional public servitude upon the rockroad easement strip through plaintiff's lands, and for the severance of her lands from direct access to the rockroad, or to any road whatever.

Defendant makes no claim that the rockroad right of way strip through plaintiff's lands was included by specific description in the condemnation judgment of 1912, but claims, as above stated, that by condemning the adjacent right of way of the Ramsey Creek Diversion levee and channel, it acquired the right, when the occasion arose, to use this right of way strip of the rockroad. We may take judicial notice of our own records (Custer v. Kroeger, 313 Mo. 130, l. c. 141, 280 S. W. 1035), and by doing so we learn from State ex rel. Hines v. Cape Girardeau and Scott County Macadamized Road Co., 207 Mo. 54, 105 S. W. 752, that the rockroad had its origin in an act of the Legislature in 1853 (Laws 1852-53, p. 337) ; that in 1853-1855 the road was constructed "across the big swamp from the city of Cape Girardeau to the bluffs in Scott County;" and was operated as a toll road until the expiration of the charter (1903) of the constructing company; and thereafter "became a free public highway." And defendant says that the road "was so used" until the construction of U. S. Highway No. 61, and that after the construction of No. 61, "substantially all the traffic that formerly passed over" the rockroad, "began to use the new concrete pavement." So it appears that the strip of the rockroad across plaintiff's land was used as a public road until taken by defendant.

In the Hines case it is stated (207 Mo. l. c. 76, 105 S. W. 752), that "no power was granted to said corporation (builder of the rockroad) to obtain a fee-simple title to the land over which said road should be constructed. The only right granted to it was to obtain an ease-

ment or right of way for its said proposed road." Thus it appears that there was a reversionary interest in the rockroad right of way, and such interest in the strip across plaintiff's land passed to her upon the cessation of use as a public road, unless defendant is correct in its contention that such interest passed to it, upon the acquisition by it by condemnation of the right of way occupied by the adjacent Ramsey Creek Diversion levee and channel.

■ Statutes conferring the power of eminent domain must be strictly construed. [State ex rel. Cranfill v. Smith, 330 Mo. 252, 48 S. W. (2d) 891, 81 A. L. R. 1066, and cases cited.] Under the *strictissimi* rule, Section 5513, Revised Statutes 1909, could not reasonably be construed to mean that any interest in any land passed, upon condemnation by defendant of the right of way of Ramsey Creek Diversion channel and levee, except *said land* (see Sec. 5513, R. S. 1909, supra), that is the right of way. Able counsel do not call our attention to any case and we find no case supporting the contention that by acquiring the right of way by condemnation of Ramsey Creek Diversion channel and levee, defendant thereby acquired the right to superimpose upon the adjacent rockroad easement an additional public servitude, and we rule that defendant acquired no such right. And when defendant placed its setback levee upon the right of way of the rockroad there was superimposed "an additional public servitude upon a part of plaintiff's soil upon which the original public highway (rockroad) rested." [State ex rel. Gagnepain v. Daues et al., 322 Mo. 376, 15 S. W. (2d) 815, l. c. 818; State ex rel. McWilliams v. Little River Drainage District, 269 Mo. 444, l. c. 457, 190 S. W. 897.]

[3] Did defendant have the right to take, without compensation, the rockroad right of way strip under Section 10768, Revised Statutes 1929? This section provides, among other provisions, that "in order to effect the drainage, protection and reclamation of the lands in the district subject to tax the board of supervisors is authorized and empowered . . . to construct any and all of said works and improvements across, through or over any public highway." State ex rel. McWilliams v. Little River Drainage Dist., supra, involved the question as to whether the county or the district should bear the burden of building a bridge over Ramsey Creek Diversion channel where it crossed the rockroad. It was held that the county had to bear this burden. In the opinion in that case is this language (269 Mo. l. c. 457-8, 190 S. W. 897):

"Concededly, the State may not through its Legislature either trench upon private rights, or devote its public highways to a wholly incompatible use, or to a use, which is not a public one. If it should superimpose an additional public servitude upon the easement, manifestly the private owner of the soil on which the original public highway easement is imposed would be aggrieved." The gist of the

opinion is that merely extending Ramsey Creek Diversion channel *across* the rockroad was not incompatible with the use of the rockroad as a public highway.

State ex rel. Caruthers v. Little River Drainage Dist. et al., 271 Mo. 429, 196 S. W. 1115, involved the same question as was in the McWilliams case, supra, and was ruled the same as in that case. In the Caruthers case (271 Mo. l. c. 435, 196 S. W. 1115), the court said: "The powers (over public highways conferred by the State upon the counties) thus conferred are subject always to the limitation that they do not trench upon private rights or attempt to devote such highways to other than a public use."

That the rockroad right of way, for about one-half mile across plaintiff's land has been converted by defendant to a use other than a public road is conceded. The right of defendant under Section 10768, supra, "to construct (without paying therefor, as was held in the McWilliams and Caruthers cases, supra), any and all of said works and improvements across, through or over any public highway" does not mean the right to construct (with immunity) *on and along* such highway so as to change a substantial part of it to a use wholly incompatible to that of a public highway. And especially should this be so when *private rights* are involved as here. Defendant contends that what is said in the McWilliams and Caruthers cases as to incompatible use and trenching upon private rights is *dictum*, but if it be such, it is sound and sensible and we adopt it as the law.

█ Does Section 11014, Revised Statutes 1929, preclude plaintiff from complaining? Defendant says that under this section plaintiff could not have direct access from her land to the rockroad without committing a misdemeanor, and that she cannot therefore complain that defendant superimposed its setback levee upon the rockroad strip through her lands and thereby deprived her of direct access to the rockroad. To get to the rockroad directly from plaintiff's lands the Ramsey Creek Diversion channel and levee must be crossed. The channel is about 130 feet in width and twelve feet deep, and the levee's base is 120 feet and it is eighteen feet high. Section 11014 makes it a misdemeanor "to . . . injure, impair or destroy the usefulness of any drain, levee, ditch," etc., and said section specifically makes it a misdemeanor, "to build any fence, dam, or other works across any such ditch." In the situation here, the term *other works* under the rule of *ejusdem generis,* has reference to something akin to a fence or dam, that is, something that obstructs (State ex rel. Goodloe v. Wurdeman, 286 Mo. 153, 227 S. W. 64), and a bridge across the Ramsey Creek Diversion channel that did not "injure, impair or destroy the usefulness" of the channel would not violate Section 11014.

But getting across the Ramsey Creek Diversion channel from plaintiff's land would not be of benefit unless the levee could be lawfully

passed over. Section 11014 makes it a misdemeanor "to use any such levee for road purposes by driving or riding any ass, mule, horse or oxen on the top or on the side of any levee at any time." It seems clear, by the very names of the animals mentioned, that the Legislature did not intend to make it a misdemeanor for a farmer or landowner through whose lands a levee extends to *cross* the levee with his stock. If by such use, crossing the levee, one should "injure, impair," etc., the usefulness of the levee, then such crossing would constitute a misdemeanor. What the section clearly means is that it is a misdemeanor to use the top or sides of a levee for a *roadway* "by driving or riding any ass, mule, horse or oxen" *along* the top or sides. That absolute exclusion of any use of a levee, except for levee purposes, was not intended by Section 11014, is made rather plain by the further provision in said section, making it a misdemeanor "to pasture any stock on any levee or right of way of any levee *while* the waters in the river or rivers are at or near flood stage in such rivers." (Italics ours.)

Plaintiff, as appears from the petition, alleged that the taking of the rockroad strip through her lands by defendant, severed "all connection and access of all of plaintiff's lands with any road whatever." Defendant argues that the map, and an aerial photograph filed with defendant's brief, conclusively show that there was no severance of access to *any road*. It is stated that the photograph was taken "just before the work" of moving the levee was commenced, and that the photograph was before the trial court. From the map, supplemented by the photograph, defendant, in effect, says that it conclusively appears that before the work of moving the levee was commenced there were two connections from plaintiff's land with the rockroad, and that, by using undisturbed portions of the rockroad, these same connections exist with the new road on the west side of the setback levee. But plaintiff in her brief denies that such connections exist after moving the levee and destroying the rockroad strip through her land.

The photograph, of course, is not a part of the record. Whatever the fact may be as the severance of plaintiff's lands from access to *any road*, the fact remains that defendant trenched upon plaintiff's private rights by superimposing upon the rockroad right of way easement through her lands an additional public servitude wholly incompatible to the use of said easement as a public road, and also made it impossible for her to have direct access from her lands to the new road on the west side of the setback levee.

The judgment should be reversed and the cause remanded, and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Lucas, J.,* not sitting.