**KANSAS CITY POWER & LIGHT COMPA-NY, a Corporation, Respondent,**

v.

**KANSAS CITY, Missouri, a Municipal Corporation, Appellant.**

No. 53870.

Supreme Court of Missouri, Division No. 1.

Dec. 8, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 12, 1970.

Thomas M. Sullivan, Downey, Sullivan, McCormick & Fitzgerald, Kansas City, for respondent.

Herbert C. Hoffman, City Counselor, Ned B. Bahr, Associate City Counselor, Richard W. Mason, Jr., Associate City Counselor, Kansas City, for appellant.

SEILER, Judge.

This is an action for quiet title and for an accounting of rents and profits. It reaches the writer on reassignment. The dispute is between plaintiff Kansas City Power & Light Company and defendant Kansas City over the title to a particluar lot within Kansas City Levee District No. 1. The parties claim from a common source, defendant by condemnation in 1948 and plaintiff by purchase in 1949. The case turns on whether Kansas City in the condemnation proceedings received a fee simple title or an easement. The trial court held it was an easement. It quieted title in the plaintiff, subject to the easement for levee purposes, and also gave plaintiff a judgment for $927.38 in rentals collected by the defendant.

Levee District No. 1 was established by ordinance passed April 1, 1946. The ordinance providing for the condemnation was passed August 18, 1947. By the latter a large amount of private property along the south bank of the Missouri River was "condemned and taken for public use as the site of levees, dikes, drains and other flood protection works." The ordinance did not state the city was condemning the fee. It referred to "* * * lands, easements and rights of way to be * * * appropriated for said levees * * *" It provided "All right-of-way, either for permanent appropriation or temporary easement, condemned in these proceedings, is referenced to and described with relation to the center line of the proposed levee and flood wall as determined by the United States Engineers' Office * . * *" The ordinance then provided "That the following private property be and the same is hereby con-

demned and taken for public use as the site of levees, dikes, drains and other flood protection works, to wit: * * *" Then followed the description of a center line survey through various tracts. The ordinance described, tract by tract, "The land for permanent appropriation" as referenced to the center line of the levee, first that lying adjacent on the right of the center line and then that on the left, followed by a description of "land condemned for temporary use". The particular tract we are concerned with was for permanent appropriation. It is 87 feet wide on the right side and varies in width on the left side from 550 to 700 feet to the meandering low water bank, over a distance of 3,000 feet or so along the river.

The ordinance called for condemnation proceedings as provided in Article VI of the Kansas City charter. The city filed a petition in condemnation, incorporating by reference as exhibits the two ordinances and praying for publication of notice and summonsing of a freeholders' jury for assessment of damages and benefits. The petition referred to "land permanently appropriated," but did not allege the condemnation was in fee or pray for a judgment in fee. The proceedings took place in circuit court in Jackson County. The jury stated in its verdict that it ascertained " * * * the just compensation to be paid for each piece of property taken in all cases where the public use is such that Kansas City must have the exclusive possession and control thereof to be its actual value * * *" It awarded plaintiff's predecessors $4,720 as the actual value of the "described property to be taken" and $320 for growing wheat. Perhaps the jury was following Sec. 149, Art. VI of the Kansas City charter, which provides that "For each piece of property taken, when the public use thereof shall be such that the city must have exclusive possession and

control thereof, the actual value of the property taken" shall be paid, although the record does not show whether the court instructed the jury to this effect, nor does it show what evidence was before the jury, except that the verdict states the jury personally examined the property.[1] The jury also assessed special benefits in smaller amounts against plaintiff's predecessors. The first specific mention of the city getting a fee title came in the judgment entered by the court confirming the verdict, which referred to the lands as being acquired "for permanent appropriation in fee". The judgment recited defendant "have and hold in fee for public use as the site of levees, dikes, drains and other flood protection works" the land specified in the ordinance for permanent appropriation, including the land here in dispute. In short, all land described to be acquired for permanent appropriation was adjudged acquired in fee.

If Kansas City is to succeed in reversing the trial court it must first establish that the condemnation proceedings gave it a fee simple title rather than an easement for levee purposes. This it does not do. The ordinance and the condemnation proceeding were to obtain an easement for levee purposes. The ordinance states at its outset that the federal government is going to do the construction without cost to the city "other than that of obtaining the necessary rights of way and easements." The words "appropriated for" and "for permanent appropriation" appear several times in the ordinance and Kansas City contends this shows it was intent upon taking the fee title. The meaning of "appropriated," particularly when construed with "for" or "to", however, is "To devote, set apart, or assign to a special purpose or use," as "to appropriate * * * a piece of ground for a garden," Oxford

1. The city says the jury proceeded under Art. IX, Sec. 332. However, this section contains no language about awarding the actual value of the property taken when the public use is such the city must

have exclusive possession and control. Art. IX, Sec. 332 simply requires that the verdict show the correct description of the private property taken and the value thereof as found by the jury.

English Dictionary, Vol. I, p. 415; Webster's New International Dictionary, 2nd Ed., p. 133; Webster's Third New International Dictionary, p. 105. "Appropriated" is not used to describe what title Kansas City is after, but to convey the idea the land sought is to be set apart for a particular purpose as indicated.

■ The land condemned was permanently appropriated, true, but it was appropriated *to and for levee purposes.* It was not necessary that the city take a fee, even though the city (or someone for it) had to be able to construct, maintain, protect and keep the levee unobstructed and subject to the control of the city. The fee is not necessary to construct, maintain and repair a levee to keep out flood waters at Kansas City. The Missouri floods there only infrequently and seldom for long periods.[2] The retention of the fee by the owner and the easement in the city for levee and flood control purposes are not inconsistent, McCarty v. Southern Pacific Co., 148 Cal. 211, 82 P. 615. In general only such an estate in the property sought to be acquired by eminent domain may be taken as *is reasonably necessary for the accomplishment of the purpose in and of which the proceeding is brought,* Nichols on Eminent Domain, 3rd Ed., Sec. 9.2, p. 262; Houck v. Little River Drainage Dist., 343 Mo. 28, 119 S.W.2d 826. Generally for public uses for a levee, it is held that a fee is not taken, Nichols, supra, Sec. 11.209, p. 513.

■ The freeholders jury awarded the actual value of the property taken, but there is no proviso either in the ordinance or the city charter that where actual value is awarded the city gets fee title. It not infrequently occurs in condemnation that even where a fee interest is not acquired, the owner is damaged to such an extent that he is entitled to compensation as for the taking of a fee, Nichols, supra, Sec.

9.2, p. 265. Thus, the fact the jury awarded the actual value of the property does not mean Kansas City got the fee. Nor is Kansas City saved by the fact that the judgment states it awards the property in fee. The judgment in this regard was broader than the basic ordinance and to that extent was in error. Only the court can enter the judgment, but it cannot enlarge the taking beyond what the city authorized by its ordinance to be taken. The enforcement of eminent domain is judicial, but the necessity and extent of exercising the right is legislative City of Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S.W. 943. The estate or interest set forth in the ordinance is what the city seeks to appropriate or damage. The ordinance occupies the place of the petition in an ordinary suit, City of Tarkio v. Clark, 186 Mo. 285, 85 S.W. 329; State ex rel. Gove v. Tate (banc Mo.Sup.) 442 S.W.2d 541; cf. Union Electric Co. v. Levin (Mo. App.) 304 S.W.2d 478. There are instances where Kansas City seeks to condemn in fee and in such instances, use by the trial court of Sec. 169, Art. VI of the charter, which calls for fee title, is called for. Sec. 169 requires that " * * * the title in fee to, and every other interest and right in, the land so condemned and taken for such public use be divested out of such owner and other person interested, and vested forever in the city * * *" Here, however, such judgment was inappropriate. The court should have proceeded under Sec. 156, Art. VI, which calls for a judgment that the city " * * * have and hold the property, easement, interest, use or right sought to be taken, upon payment to the parties entitled thereto * * * of the compensation awarded therefor * * *" This would fit the easement which the city was seeking. The case of Daly v. Kansas City (Mo.Sup.) 317 S.W.2d 360, 364, cited by the city for the proposition that the judgment in the present case operated to vest title in the

2. According to the 1968 report of Geological Survey of the Department of Interior on Magnitude and Frequency of Floods in the United States, p. 403, the Missouri River at Kansas City flooded in 11 of the years in the period 1929–62.

city, did not involve the question whether the judgment could be broader in quantum of title awarded than that sought by the condemnation ordinance. The Daly case involved condemnation of land for a park, which is considerably different from a levee. The opinion expressly states the condemnation ordinance was not before the court. We do not, therefore, consider the case as controlling the question before us now.

■ Kansas City stresses the fact the ordinance in the case at bar condemned the reversionary private rights in all public streets in the levee district. This undoubtedly was done because the city realized that use of the land for streets did not authorize its use for levee purposes. The latter use would impose a new and additional servitude upon the land. So the city condemned the reversionary interests therein. This action with respect to streets did not, therefore, enlarge or change the interest which the city sought in the other land involved.

Bradley v. Elsberry Drainage Dist. (Mo. Sup.) 425 S.W.2d 950, strongly relied on by the city, is distinguishable because it involved condemnation proceedings under a statute which, when the full value of the land was awarded as damages, required the title be vested in the drainage district, which also had power to dispose of such fee simple title. That is not the situation here. We note, too, that the court in the Bradley case pointed out it could not look to the original petition in condemnation to ascertain the interest which the district sought, because the original petition had been lost.

■ Kansas City also contends plaintiff is in no position to challenge the 1948 condemnation proceedings; that plaintiff having been an actual party to the condemnation action by virtue of owning some other property in the levee district, on which it was awarded damages and assessed benefits, which were accepted and paid, is bound by the judgment in all respects and estopped from directly or collaterally attacking same. We need not determine whether plaintiff is here making a direct or a collateral attack. In Count I, plaintiff states defendant has an easement for levee purposes as set forth in the August 18, 1947 ordinance, which it incorporates in the petition by reference, and that the rights of the defendant for easement purposes were taken by condemnation. In the prayer, plaintiff asks that defendant be precluded from asserting any title to the premises other than the easement. Plaintiff is not attempting to dispute the facts adjudicated in the condemnation action and regards it as valid up to a point. Plaintiff is challenging the legal conclusion reached in the condemnation judgment that Kansas City obtained fee simple title. Whatever type of challenge this is by plaintiff, the trial court in the 1948 condemnation case, as we have seen, went beyond the allegations of the pleadings and the prayer for relief when it attempted to vest fee simple title to the condemned land in Kansas City when that was not an issue tendered by the condemnation ordinance. In such a case, the judgment, at least to that extent, is void and open to collateral attack, Charles v. White, 214 Mo. 187, 112 S.W. 545, 549; Weatherford v. Spiritual Christian Union Church (Mo.Sup.) 163 S.W.2d 916, 918; Hecker v. Bleish, 319 Mo. 149, 3 S.W.2d 1008, 1019. The cases cited by defendant, Tremayne v. St. Louis, banc, 320 Mo. 120, 6 S.W.2d 935 and State ex rel. State Highway Commission v. Howard (Mo. Sup.) 315 S.W.2d 786, are not in point because they do not involve condemnations where the relief granted went beyond the issues raised in the pleadings. The point is overruled.

■ There is no need to consider other points raised, beyond mentioning that the claim of laches on the part of plaintiff in allegedly not asserting its title until this action was filed in 1960, is not, in our opinion, of merit. The plaintiff has been paying taxes and leasing out the land.

It has made a subdivision out of it. It has a transmission tower on it. We do not believe the city has established laches against plaintiff.

■ As to the $927.38 judgment on Count II for rentals collected by the city, it is plain the use made of the rented land at the time did not interfere with the city's easement and the trial court correctly awarded these past rentals to the owner of the fee. We observe, however, the ordinance of condemnation states that for the purpose of " * * * constructing, maintaining and protecting the levee and flood protection works * * * and to insure that such areas be unobstructed and be subject to the control of the City * * *", it was necessary to condemn all the lands and easements described. By the stipulation of the parties Kansas City is required under the regulations of the Secretary of War to inspect, operate and maintain the levee and flood control works. It must make certain there are no encroachments upon, or excavation or construction, or any improvement within the limits of the project right of way which might endanger the structure, hinder function or impede the channel or floodway. It therefore has the primary claim to possession to the extent as reasonably required by it to fulfill its purpose of maintaining and protecting the levee and flood protection works and making sure said areas are unobstructed and subject to the control of the defendant. Kansas City must be able to see to it that the levee is protected against erosion, perforations, burrowing animals, undermining, and activities or practices which would weaken the levee or lessen the carrying capacity of the floodway. While it must account to plaintiff for the rents it has collected, this fact does not detract in any way from its right to make such use of the land condemned as might be required to carry out the declared purposes of the easement. The right of the city to the use of its easement is paramount to every right of the owner of the fee which is inconsistent with such use, St. Louis K. & N.

Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192, 194.

Judgment affirmed.

HOLMAN, J., and HENLEY, Alternate Judge, concur.

STORCKMAN, J., absent.